CIMIOTTI UNHAIRING CO. et al. v. BOWSKY.

(Circuit Court of Appeals, Second Circuit.  December 5, 1905.)

No. 1.

1. PATENTS—INFRINGEMENT—MACHINE FOR REMOVING HAIRS FROM FUR SKINS.
    The Sutton patent, No. 383,258, for a machine for removing hairs from fur skins, claim 8 considered, and *held* infringed.

2. SAME—PROFITS.
    A finding as to the profits made by a defendant by the use of an infringing machine sustained, where it accorded with his own testimony given in another suit.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from a final decree, entered on the report of a master, awarding to complainants the amount of defendant's profits made by his infringement of letters patent, No. 383,258, granted to John W. Sutton and owned by complainants. For opinions below see 95 Fed. 474; 108 Fed. 82, 85.

The opinion of the Supreme Court reviewing the entire field of litigation in the lower courts and sustaining the Sutton patent, after restricting somewhat the scope of the eighth claim, is reported in 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100.

See 113 Fed. 698, 699.

Henry Schreiter, for appellant.

Louis C. Raegener and S. L. Moody, for appellees.

Before WALLACE and COXE, Circuit Judges, and THOMAS, District Judge.

COXE, Circuit Judge.  Few patents have met with more persistent and strenuous opposition than the Sutton patent in suit.  All controversy as to the validity of the eighth claim and as to the proper rules for its interpretation has at last been set at rest by the decision of the Supreme Court.  But two questions arise on this appeal:  First. Did the defendant infringe?  Second. Did the master err in his method of computing the defendant's profits?

The Supreme Court holds that the Sutton patent is for a meritorious though not a broad initiative invention, and that it is entitled to some range of equivalents.  The opinion says:

"Due weight is given to the Sutton patent when it is given credit for dispensing with the plate which Covert had in addition to the brush, and which he supposed would carry down the fur away from the cutting mechanism, but which Sutton has accomplished in giving, in a measure, at least, this added function to the brush of not only parting the fur, but carrying it down and away in preparation for the clipping by the knives.  Any one who accomplishes the same purpose by substantially the same mechanism, using the elements claimed in Sutton's patent, may be held to be an infringer.  Sutton has taken the step which marks the difference between a successfully operating machine and one which stops short of that point, and that advance entitles him to the protection of a patent."

It is argued that the defendant's machine does not contain the fifth element of the claim, namely, "mechanism whereby the rotary brush is moved upward and forward into a position in front of the stretcher-bar."

The defendant testifies that the rotary brush employed by him does not brush the fur from the edge of the stretcher-bar leaving the water hairs standing before they have been burnt away by the metallic conductor heated to incandescence, but, on the contrary, that it brushes the water hairs off after they have been burned. In other words, he contends that the brush performs no function of the claim but operates only to brush out of the fur the remnants of the singed hair. When asked if the brush "materially assists in brushing down the fur and causing new water hair to rise up" he answers:

"If it does that it is accidentally and was not intended because the brush does not touch the fur hard enough to produce that effect mechanically."

It is argued that this function is performed by the joint action of the apron and the stationary brush which seems to be the exact equivalent of the "stationary card E" of the Sutton patent. The defendant is, therefore, forced to maintain that the fur can be brushed aside and the water hairs made to stand up at the part by the use of the "card E" alone; a propositon which is refuted by the entire art and by all the testimony in the case. It was because a stationary brush would not do the work that not only Sutton, but all the prior inventors were seeking to discover some device that would do it. Sutton found it in the rotary brush and no commercially successful machine has been built since which has omitted this feature. It is true that the defendant's brush does not move in the same orbit as the brush of the patent, but this is true of all the machines heretofore held to infringe. In two of them, indeed, the brush did not move at all, the stretcher-bar moving back and forth from the brush to the cutters, and yet it was held that the two constructions were equivalents, the defendant's device accomplishing the same result in substantially the same way. There is nothing magical in the course taken by the brush, as shown in the Sutton drawings. Any other course, which produces the desired condition at the edge of the stretcher-bar, will do as well, and an infringer cannot escape because he has made ingenious mechanical changes in the mechanism which actuates the brush.

As has been pointed out again and again during this protracted litigation the essence of Sutton's invention is the arrangement of the rotary brush so that it will separate the fur from the stiff water hairs, permit the latter to stand up on the edge of the stretcher-bar and brush down the former on the off side of the bar so that it will not be cut by the knives or burnt by the electric conductor. That the defendant uses such a brush there can be little doubt. His brush is not as effective as that of the patent; it does not do the work so well; but that it brushes away the fur and permits the stiff hairs to be burnt off without injury to the fur is established beyond reasonable doubt.

Our reasons for reaching this conclusion may be summarized as follows:

First. Unless the fur is removed from the edge of the stretcher-bar it will be burnt and the pelt destroyed. Nothing is shown in the defendant's mechanism which does this except the rotary brush. The apron will not do it; the card will not do it; and yet that it is done is

undisputed. Nothing is left to do this work but the rotary brush. The inference that the work is done by the brush is well-nigh conclusive. It is difficult to believe that the defendant would have mounted the brush on movable bearings and moved it forward and backward along the lower surface of the bar, involving the risk of an infringement suit, if the sole function of the brush were to remove the singed hair. A brush on fixed bearings, far removed from the edge of the bar would do this as well.

Second. Stephen Hanna, a witness called for the defendant, testified that in June, 1897, he fixed up a machine for the defendant like that shown and described in Figs. 5 and 6 of the Jenik patent; that in the machine there was a rotary brush "like 'C' in the Jenik patent;" that this brush "permitted the water hairs to stand up in order to be acted upon by the platinum strip;" that subsequently he made a change so that the brush moved up and down behind the stretcher-bar. Turning to the Jenik patent we find the brush C described as follows:

"A successive strip of pelt is pulled through the teeth of the comb K and the coarse and stiff hairs singed off by the blade approaching the pelts each time exactly when one of the six rows of bristles of the brush C has passed over and brushed away the fur from the edge of the bar, and the gap, following it, allows the stiff hairs to rise."

Third. The defendant's expert submits four illustrative sketches which, apparently, show the stiff hair and fur standing up on the edge of the stretcher-bar. After the brush has been moved into contact the fur and hair are shown brushed down out of harm's way, and when the brush recedes the stiff hairs spring up ready for the singeing blade precisely as in the Sutton machine. In his testimony the expert says:

"It might be that the movable rotary brush of the defendant's machine, while in its uppermost position, may catch up and draw some part of the fur from the edge of the stretcher-bar, and thereby help to separate the fur from the water hairs protruding on the edge of the stretcher-bar."

In short, the position of both the defendant and his expert seems to be that though the defendant infringes the infringement is unintentional, negligible and accidental. The defendant's brush is moved into a position in front of the stretcher-bar, in the sense that it is ahead of the bar, though not directly in front; it brushes some, at least, of the fur from the edge of the bar and it permits the water hairs to spring back ready for the knife or singeing blade. This is enough; it is not an excuse that it is less effective than the Sutton brush.

Fourth. Three intelligent witnesses for complainants, entirely familiar with the art, testify that the defendant's machine contains all the elements of the eighth claim of the Sutton patent.

We think the Circuit Court was right in finding infringement. The contention that the master erred in finding that the defendant made a profit of 75 cents per dozen on the pelts unhaired by him is based upon a misconception of the proof. The defendant was confronted with his testimony in an action for libel against the Cimiotti Unhairing Company and testified that his answers in that suit were true as he believed them to be in the absence of his books. He there testified that he made 75

cents per dozen profit on the skins unhaired by him.   The proposition is now advanced that in giving his answer he only referred to the skins unhaired during the month preceding the service of the injunction.   We do not think the testimony warrants this interpretation.

He was asked to state what work he did with his machines.   In answer he said that at first, while they were getting the machines in order, the business was not so flourishing, but at the close, after they were in good running order, "we made at least a thousand dozen a month—the last month."   He was then asked:   "What were you receiving per dozen for unhairing those skins?"   The contention that "those skins" referred only to those unhaired during the last month places a very strained and unnatural construction upon the language used.   It is stated in the complainants' brief that this contention is here presented for the first time and we are unable to find anything in the record to the contrary.   The defendant could have made any explanation of his testimony he desired, and had the question been raised before the master the complainants would have had an opportunity to show that the profit was the same during the entire infringing period.

It is enough, however, to say that we think the testimony does not justify the defendant's interpretation.   We have now considered the questions discussed at the bar.   Other errors are assigned in the brief, and though we have examined them with care we think none of them is well founded or requires extended comment.

The decree is affirmed with costs.