T. B. HARMS & FRANCIS, DAY & HUNTER v. STERN et al.*

(Circuit Court of Appeals, Second Circuit, December 14, 1915. On Motion
for Rehearing, January 5, 1916.)

No. 56.

1. COURTS ☞291—UNITED STATES COURTS—JURISDICTION—SUITS UNDER
COPYRIGHT LAWS.
    The right asserted and the defense interposed in a suit to enjoin the in-
fringement of a copyright and for an accounting and damages were within
the exclusive jurisdiction of the federal courts under Judicial Code (Act
March 3, 1911, c. 231) § 256, 36 Stat. 1160 (Comp. St. 1913, § 1233), giving
such courts jurisdiction exclusive of the state courts of cases arising un-
der the copyright laws of the United States.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 833; Dec. Dig.
☞291.]

2. LITERARY PROPERTY ☞6—TRANSFERS—RIGHTS OF AUTHOR.
    The right of an author in his unpublished manuscript is full and com-
plete, and it is subject to his disposal as much as any property of which
he is possessed, and he may make an absolute conveyance of it, and in-
vest his grantee with full right of property thereto, including the right
to secure copyright of the production.
    [Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 5; Dec.
Dig. ☞6.]

3. LITERARY PROPERTY ☞6—TRANSFERS—EQUITIES.
    Where the author of a musical composition had agreed that defendants
should have the sole and exclusive production and publishing rights of all
compositions written by him, persons to whom such author undertook to
transfer his right, title, and interest in a composition took subject to de-
fendants' equities, whether with or without notice.
    [Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 5; Dec.
Dig. ☞6.]

4. COPYRIGHTS ☞41, 42—TITLE OF PERSON SECURING COPYRIGHT.
    The legal title to a copyright vests in the person in whose name it is
taken out; but it may be held by him in trust for the true owner.
    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 40, 41, 48;
Dec. Dig. ☞41, 42.]

5. JUDGMENT ☞744—CONCLUSIVENESS—MATTERS CONCLUDED.
    R. agreed with defendants that they should have the sole and exclu-
sive production and publishing rights of all musical compositions which
he might write during a period of five years. He composed a musical com-
position and attempted to transfer his interest therein to a company,
which assigned to plaintiffs the sole and exclusive right to publish, copy-
right, and vend in sheet music form such musical composition. Plaintiffs
procured a copyright, and sued defendants for infringement. Defend-
ants had previously sued R. in a state court for specific performance, and
the complaint was dismissed on the ground that the contract was inequi-
table and that it lacked mutuality of obligations and remedy. Held, that
defendants were estopped by such judgment from claiming any equitable
rights under such contract, and from claiming that plaintiffs held legal
title to the copyrighted composition as trustees for them, since, no 'copy-
right having been procured when the suit for specific performance was
brought, and there having been no diversity of citizenship, the state court
rendering such judgment had jurisdiction.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1278–1281;
Dec. Dig. ☞744.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*For further opinion on reargument, see 231 Fed. 645.

**6. JUDGMENT ⬅️948—NECESSITY OF PLEADING JUDGMENT.**

Plaintiffs could introduce the judgment of the state court without pleading it, as the rule which requires a former adjudication to be pleaded when relied upon as an estoppel is without application, when the judgment, instead of being relied on in bar of the action, is set up merely as conclusive of some particular fact or question formerly in issue and adjudicated.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1787–1793; Dec. Dig. ⬅️948.]

**7. SPECIFIC PERFORMANCE ⬅️32—LACK OF MUTUALITY—CURE BY SUBSEQUENT PERFORMANCE.**

A contract, lacking in mutuality when it is entered into, may by subsequent performance be cured of its defect.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. ⬅️32.]

**8. LITERARY PROPERTY ⬅️6—SALES OF UNWRITTEN COMPOSITIONS.**

If a vendor sells future acquisitions of property, such as musical compositions at the time unwritten, the equitable title thereto attaches the moment it comes into existence, and vests in the grantee.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 5; Dec. Dig. ⬅️6.]

**9. SPECIFIC PERFORMANCE ⬅️12—DEFENSES—PIECEMEAL PERFORMANCE.**

The principle that the court will not decree specific performance of a contract by piecemeal, but that it must be performed in its entirety, if performed at all, does not apply to contracts which, though they may be entire and single in themselves, contemplate a separate and piecemeal performance of separate parts.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 26–28, 37; Dec. Dig. ⬅️12.]

**10. LITERARY PROPERTY ⬅️6—SALES OF UNWRITTEN COMPOSITIONS.**

A contract selling, assigning, and transferring to defendants the right to print, publish, and sell musical compositions which R. might write during a period of five years, could not operate at law to vest the legal title in defendants to compositions subsequently written, as there can be no valid sale, unless there is an actually or potentially existing subject.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 5; Dec. Dig. ⬅️6.]

**11. LITERARY PROPERTY ⬅️6—SALES OF UNWRITTEN COMPOSITIONS.**

Such contract, though without effect at law as a contract of sale, operated as an executory agreement to sell, and imposed upon R. an obligation to perform it, the breach of which could be redressed in an action for damages.

[Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 5; Dec. Dig. ⬅️6.]

**12. EQUITY ⬅️65—MAXIMS—FORMER ADJUDICATION—CONCLUSIVENESS—MATTERS CONCLUDED.**

R. sold, assigned, and transferred to defendants the right to print, publish, and sell all compositions which he might write during a period of five years. Defendants sued for specific performance of this contract, and the complaint was dismissed on the ground that the contract was inequitable and that it lacked mutuality of obligations and remedy. R. undertook to transfer all his right, title, and interest in a composition to a company which assigned to plaintiffs the sole and exclusive right to publish, copyright, and vend such composition in sheet music form. Plaintiffs obtained a copyright and sued defendants for infringement. *Held*, that while, if the contract had been valid, relief might be denied on the ground that R. and his assignees with notice had not done equity and did not

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

come into court with clean hands, the judgment in the suit for specific performance determined that the contract lacked, not only mutuality of remedy, but also mutuality of obligation, and was an adjudication that the contract was invalid, and hence defendants could not rely on such contract for any purpose.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. ☞65.]

13. JUDGMENT ☞551—BAR—ACTIONS AND PROCEEDINGS BARRED.
A final decree on the merits in a suit in equity operates as a bar to any further litigation between the same parties on the same subject-matter in a court of law, and a final judgment on the merits in an action at law bars any further action between the parties on the same cause of action in a court of equity, except in matters which are within the exclusive cognizance of equity, so that they could not rightfully have been determined in an action at law.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 995, 996; Dec. Dig. ☞551.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by T. B. Harms & Francis, Day & Hunter against Joseph W. Stern and another, copartners doing business as Jos. W. Stern & Co. From an order (222 Fed. 581) denying an injunction, plaintiff appeals. Reversed, and issuance of injunction directed.

Max D. Josephson, of New York City, for appellant.

Cohen & Richter, of New York City (Theodore B. Richter, of New York City, of counsel), for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff on February 20, 1915, secured copyright for a musical composition or song entitled "Oh, Those Days." The defendants on or about March 12, 1915, published the music of this composition, and placed it on the market for sale, in various music stores in the city of New York and throughout the different cities of the United States. The plaintiff thereupon began proceedings in the court below to protect its copyright against infringement, and asked an injunction, an accounting, and damages. The case was heard on the bill and answer and accompanying affidavits, and the injunction was refused, upon the ground that the plaintiff was in no position to ask for any equitable remedy.

The Constitution provides that:

"The Congress shall have power * * * to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Article 1, § 8.

In pursuance of the authority thus conferred Congress has enacted the Copyright Law, and has specified in the fifth section the writings for which copyright can be obtained, and among them "(d) Dramatic or dramatics—musical compositions," and "(e) Musical compositions." Act March 4, 1909, c. 320, 35 Stat. pt. 1, p. 1076 (Comp. St. 1913, § 9521). The statutes of the United States provide that the jurisdic-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion vested in the courts of the United States shall be exclusive of the courts of the several states "of all cases arising under the patent right or copyright laws of the United States." Rev. St. 1878, § 711; Comp. Stat. 1913, § 1233; Judicial Code, § 256.

[1] The question which this case presents, therefore, is one within the exclusive jurisdiction of the federal courts, and concerning it no state court could pass a valid judgment. It is for the federal courts alone to pass, not only upon the right which the plaintiff asserts, but upon the defense which the defendants interpose to the suit.

[2] The legal right which the plaintiff asserts is derived through an assignment by the composer of the musical composition herein involved. It appears that prior to February 10, 1915, Sigmund Romberg and Harold Atteridge delivered a musical composition to the Wintergarden Company, a New York corporation engaged in the business of producing and presenting musical comedies. All their right, title, and interest in the composition Romberg and Atteridge undertook to transfer to the Wintergarden Company. Romberg was the composer of the music and Atteridge was the author of the lyrics of the composition. The Wintergarden Company thereupon at once assigned to the plaintiff "the sole and exclusive right, license, privilege, and authority to publish, copyright, print, reprint, copy, and vend in sheet music form" the musical composition or song entitled "Oh, Those Day." The right of an author in and to his unpublished manuscript is full and complete. It is subject to his disposal as much as any property of which he is possessed. He may make an absolute conveyance of it and invest his grantee with full right of property thereto, including the right to secure copyright of the production. Paige v. Banks, 13 Wall. 608, 614, 20 L. Ed. 709 (1871). The plaintiff, claiming to be the sole and exclusive proprietor and owner of the composition which had never been printed or published in this or in any foreign country, secured a copyright of the composition on February 20, 1915. It is not claimed that in securing the copyright it failed to comply with the requirements of the Copyright Act. It is admitted that the legal title is in the plaintiff.

[3, 4] That defendants, since the copyright was obtained, have published the music, but not the words, of the composition, is also conceded. The claim of the defendants is that they themselves are the owners and proprietors of the music of this composition, and they deny that they have committed, any wrongful act whatever in its publication. They rely upon a written agreement made between themselves and Romberg on August 11, 1913, in justification of what they have done. That contract provided that defendants should have "the sole and exclusive production rights for all operettas, musical comedies, farces with music, etc., which Mr. Romberg may write during the course of the next five years." It also provided that defendants should have "the sole and exclusive publishing rights of all compositions which he may write during" the same period. The contract bound the defendants to pay Romberg specific royalties on the publications. The defendants allege that the musical composition was written within the five-year period named in the contract, and that the

plaintiff and the Wintergarden Company, before the respective assignments to them of this composition, had full knowledge of the contract and of defendants' right thereunder, and took subject thereto. That the plaintiff and the plaintiff's assignor had notice is not denied. But the fact of notice is unimportant, as the assignees would take subject to the equities whether with or without notice. This principle, however, would not prevent the vesting of the legal title to the composition in the plaintiff. Moreover, the legal title to a copyright vests in the person in whose name the copyright is taken out. It may, however, be held by him in trust for the true owner, and the question of true ownership is one of fact, dependent upon the circumstances of the case. Press Publishing Co. v. Falk (C. C.) 59 Fed. 324 (1894); Black v. Henry G. Allen Co. (C. C.) 42 Fed. 618, 9 L. R. A. 432 (1890); Lawrence v. Dana, Fed. Cas. No. 8136; 9 Cyc. 930. In Paige v. Banks, supra, the Supreme Court of the United States had under consideration an agreement made by Mr. Alonzo Paige, reporter of the New York Court of Chancery, in which he had agreed to furnish in manuscript the reports of that court for publication to certain law publishers, Gould & Banks. The agreement also provided that Gould & Banks should have the copyright of said reports. The court, speaking through Mr. Justice Davis, said:

"It is not covenanted that the publisher should take out the copyright, nor is there any express agreement for an assignment to them by Paige, if he should take it out. Undoubtedly the provision, that the publishers 'should have the copyright,' would authorize them to apply for it, and if Paige had taken it out in his own name it would have inured to their benefit. But, as between Paige and the publishers, the rights of the latter could not be estimated differently, whether they had or had not availed themselves of the provisions of the act."

So in the case at bar the question is whether the plaintiff holds its copyright to this production subject to the equitable rights of the defendants. The plaintiff's right is not superior in any respect to the right of Romberg, if the latter had taken out the copyright in his own name; the plaintiff stands in Romberg's shoes. Could Romberg have obtained an injunction and damages against defendants, if Romberg had copyrighted this production?

[5] At this point we are confronted by a decision rendered in the Supreme Court of New York in an action which the defendants brought against Romberg on the contract of August 11, 1913. That suit was one for specific performance of that contract and for an injunction; the defendants in this suit being the plaintiffs in that. The suit was brought against Romberg, the Shubert Theatrical Company, and Jacob J. Shubert, and was commenced on March 24, 1914. It asked for an injunction to restrain the defendants "from producing, performing, or publishing any composition written by Romberg and delivered to the Shubert Theatrical Company and Jacob J. Shubert." It also sought, according to the affidavit presented to the court below, the specific performance of the contract of August 11, 1913. The counsel for the defendants in that action moved to dismiss the complaint, and the motion was granted on November 10, 1914; the court making the following conclusions of law:

"I. The relief sought by the plaintiffs in this complaint and the complaint itself rests entirely upon the foregoing contract, from which the rights of the parties must be ascertained.

"II. Assuming that the plaintiffs could establish as facts all that they have offered by their counsel to show by his offers of proof, nevertheless, under the allegations of the complaint, and under the contract as conceded, no cause of action for equitable relief can be predicated upon the allegations of the said complaint, and said allegations contained in said offers of proof, even if the latter be assumed to have been established as facts.

"III. The defendants' motion to dismiss the complaint upon the ground that the contract is inequitable and that it lacks mutuality of obligations and remedy must be granted, and the complaint must be dismissed, with costs.

"Let judgment be entered accordingly."

The defendants in their answer in the case now before us have pleaded as their defense the contract upon which the New York court passed in entering the above judgment. They allege that by that contract—

"the said Sigmund Romberg did duly sell, assign, transfer, and set over, and vest in the defendants, the sole and exclusive right to print, publish, and sell all compositions which he might write during the period of five years from the date of the said agreement, and wherein and whereby the said Sigmund Romberg did further set over unto the defendants herein the copyright and the right to recopyright all the compositions which the said Sigmund Romberg might write during the period of the said agreement in order that the defendants might thereby protect the publishing rights vested in them by the said agreement, and that by virtue of the aforesaid agreements the defendants duly became the sole owners and proprietors of the exclusive right to print, publish, and sell each and every work composed by the said Sigmund Romberg during the period of the aforesaid agreement and of the copyright in and to each and every of such work and of the right to copyright and recopyright the same."

It is upon the contract thus set up that defendants must rely to establish that the plaintiff holds the legal title to the copyrighted composition as trustee for defendants, having the beneficial ownership. Can the defendants in this action assert any equitable rights under this contract, or are they estopped?

[6] The plaintiff has not pleaded the judgment as an estoppel. That, however, was not necessary. The rule which requires a former adjudication to be pleaded, if it is relied upon as an estoppel, is without application when the judgment, instead of being relied on in bar of the action, is set up merely as conclusive of some particular fact or question formerly in issue and adjudicated. See Southern Pacific R. Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355 (1897); Foulke v. Thalmessinger, 1 App. Div. 598, 37 N. Y. Supp. 563, affirmed in 158 N. Y. 725, 53 N. E. 1125 (1899). The plaintiff, therefore, without pleading it, had a right to introduce the evidence of the judgment of the state court, and did so in the form of an affidavit presented to the District Court on the application for the injunction. So long as that judgment remains unreversed, it estops the defendants from claiming that they possess any equitable rights under the contract. The defendants submitted that contract to the New York court. That court had jurisdiction of the matter involved, no copyright at that time having been procured, and as there was no diversity of citizenship the federal courts not only had no exclusive jurisdiction,

but they had no jurisdiction whatever, of the subject-matter of the suit. The court held the contract to be inequitable, and lacking in mutuality of obligation and of remedy, and refused specific performance and an injunction. We know of no way by which the defendants can escape from the effects of that judgment standing unreversed. The defendants in that action and their privies had a right to rely upon it as decisive of the question that the plaintiffs in that suit had no standing in a court of equity to assert a beneficial interest in any of Romberg's writings or compositions under the contract.

[7-9] If the defendants in the present suit were not estopped from bringing in this contract, it may be that this court might reach the conclusion that defendants have a beneficial interest in the copyright. A contract lacking in mutuality when it is entered into may by subsequent performance be cured of its defect. See Fry on Specific Performance (5th Edition, with Canadian Notes) p. 241. And if a vendor sells future acquisitions—in this case, musical compositions at the time unwritten—the equitable title to the property attaches the moment it comes into existence and vests in the grantee. Holroyd v. Marshall, 10 House of Lords Cases, 191 (1862). And the principle that a court will not decree specific performance of a contract by piecemeal, but that it must be performed in its entirety, if performed at all, does not apply to contracts which, though they may be entire and single in themselves, contemplate a separate and piecemeal performance of separate parts. Fry on Specific Performance, § 840.

It would seem that an agreement made by an author assigning his interest in any future musical compositions he might compose, if supported by a valuable consideration and limited in time, is as much entitled to be specifically enforced as agreements made by a patentee who assigns all future improvements on a patented device. Mississippi Glass Co. v. Franzen, 143 Fed. 510, 74 C. C. A. 135, 6 Ann. Cas. 707 (1906). And see Birkery Mfg. Co. v. Jones, 71 Conn. 113, 40 Atl. 917 (1898). Such an agreement, it may be conceded, might be invalid if an author undertook for a present consideration to give an exclusive right in all writings which he might at any time in the future produce. Such an agreement might be contrary to public policy and void, just as an agreement by an inventor transferring to another a right in all inventions he might at any time thereafter make might be void. Aspinwall Mfg. Co. v. Gill (C. C.) 32 Fed. 697 (1887). But in this case the composer Romberg was to be paid royalties on his compositions as they were produced and sold, so that the incentive to produce was not taken away, and the contract was not unlimited in time. We do not, however, decide any of these questions now, and it is not important to the defendants how this court might have decided them if the defendants were not estopped from presenting them by the New York judgment.

But did the contract confer upon the defendants any rights at law? The District Judge seemed to be under the impression that it did. He said:

"Romberg could not be put in jail, if he performed his songs, or if he refused to make an assignment of his literary property; but the obligation to

assign was valid, and the obligees might get a judgment for damages at law for his failure to perform. The agreement, though in words of present assignment, could not come into existence; but, when Romberg composed the song, it did come into existence, and was at least valid as an executory contract to assign, whether enforceable only at law or not. * * * If Romberg's contract was valid at law, as I have decided, neither he nor his assignee with notice come blameless into a court of equity. The legal right upon which they base their claim in equity would, if Romberg had performed his valid obligations, now be vested in the defendants; they are violating that legal right only because he has already violated their right by failing to give them the title, and with it the right to do exactly what they are now doing. His prior wrong is the occasion of the acts of which he complains. In such circumstances he is in no position to ask for any equitable remedy."

[10-13] The contract "sold, assigned, and transferred" the right "to print, publish, and sell" all compositions which Romberg "might write" during a period of five years from the date of agreement. Such an agreement could not operate at law to vest the legal title in the defendants to these compositions, for the reason that the compositions were not at the time in existence. There could be no valid sale unless the thing to be sold was in rerum natura and under the immediate control of the vendor. The common-law doctrine is expressed in the maxim "Licet dispositio de interesse futuro sit inutilis tamen potest fieri declaratio præcedens quæ sortiatur effectum interveniente novo actu." The common law prevents the sale of things which the vendor has not in his possession by falling back upon the common-sense notion that if one has not a thing to sell he cannot sell it. To every contract of sale an actually or potentially existing subject is necessary. At law one cannot transfer by a present sale what he does not then own, although he expects to acquire it. But, while the contract was without effect at law as a contract of sale, it operated as an executory agreement to sell. Whitehead v. Root, 2 Metc. (Ky.) 584, 587 (1859); Parsons on Contracts, vol. 1, p. 439; 35 Cyc. 46. And while the agreement could not be specifically enforced, it imposed upon Romberg an obligation to perform it, and the breach of the agreement could be redressed in an action for damages.

The legal and moral obligation which Romberg assumed he afterwards repudiated. If he had retained the title to the musical composition herein involved, and taken out his copyright, and defendants had published, and he had asked an injunction against them, the relief might have been denied, and he might have been informed that he who comes into equity must do so with clean hands. "He that hath committed iniquity shall not have equity." He who desires relief in equity must himself be free from fault. The plaintiff in this case, who acquired its rights with full knowledge of the legal and moral obligation resting upon its assignor, may be in no better position than its assignor; its equity may not be superior to his. All this may be perfectly true, if we assume that a valid contract existed. But it affords no help to defendants in the federal courts if the defendants are estopped by the action of the New York courts in holding the contract invalid. So long as the New York judgment stands unreversed, the defendants cannot rely upon it for any purpose at law or in equity as against the parties or their privies in the suit in the state

court. The New York court refused relief upon the ground that the contract lacked not only mutuality of remedy but also mutuality of obligation. In other words, that court held that the contract lacked that which was essential to give it any validity as a binding contract.

Now a final decree on the merits in a suit in equity operates as a bar to any further litigation between the same parties on the same subject-matter in a court of law, and a final judgment on the merits in an action at law bars any further action between the parties on the same cause of action in a court of equity, except in matters which are within the exclusive cognizance of equity, so that they could not rightfully have been determined in an action at law. And a decision adjudging a contract invalid is conclusive of that fact for all purposes in any further litigation between the same parties and their privies. Andrews Bros. Co. v. Youngstown Coke Co., 86 Fed. 585, 30 C. C. A. 293; Stockwell v. Silloway, 113 Mass. 384; Goodwin v. Snyder, 75 Wis. 450, 44 N. W. 746; Summers v. Oberndorf, 73 Md. 312, 20 Atl. 1068; Chase v. Walker, 26 Me. 555. That contract cannot, therefore, be relied upon in this court by these defendants against these plaintiffs for any purpose. With that contract eliminated from this case the defendants have no defense which they can successfully interpose to the application for the injunction.

The order is reversed, and the District Court is directed to issue an injunction pendente lite as prayed.

## On Motion for Rehearing.

PER CURIAM. In this cause our opinion has been filed, but mandate has not yet issued. Our decision was based upon the proposition that issues in this cause were res adjudicata, because the record contained a judgment of the state Supreme Court entered in a suit between the same parties (or their privies). Application has been made for a reargument, and with such application there has been filed a copy of the printed case on appeal to the Appellate Division in said cause in the state court. This printed case on appeal apparently indicates that the state Supreme Court amended its judgment, subsequent to original entry, so that its disposition of the issues before it is different from what it was in the original judgment.

The mere filing of this paper book in no way changes the situation here; the only record before us is the record certified to this court by the United States District Court. We will, however, withhold mandate from issue during this session, so that the counsel, who has moved for reargument, may make application, on notice, on one of our regular motion days, for such relief as he may be advised, to show, if he can, that the state court did not hold the contract sought to be enforced invalid at law, and so operate to deprive his client of the opportunity to obtain a decision on the merits of this cause in the federal courts.