EDWARD B. MARKS MUSIC CORPORA-
TION v. JERRY VOGEL MUSIC CO.,
Inc., et al.

SAME v. JERRY VOGEL MUSIC CO., Inc.
(two cases).

District Court, S. D. New York.

Jan. 13, 1942.

Arthur E. Garmaize, of New York City, for plaintiff.

Wattenberg & Wattenberg, of New York City (Sidney Wm. Wattenberg, of New York City of counsel), for defendant Cora L. Harris.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll, Thomas E. Shea, and Milton M. Rosenbloom, all of New York City, of counsel), for defendant Jerry Vogel Music Co. Inc.

LEIBELL, District Judge.

Plaintiff moves under Rule 56, Federal Rules of Civil Procedure, for orders granting summary judgment in its favor in these three actions, on the ground that there exists no genuine issue of any material fact. These actions are predicated upon the alleged infringement by defendants of plaintiff's renewal copyrights in the music of two musical compositions, entitled "I Wonder Who's Kissing Her Now" and "The Bird on Nellie's Hat", and the infringement of the renewal copyright of the lyrics of a third musical composition entitled "December and May". Plaintiff seeks a permanent injunction against said infringers and damages for past infringements. Inasmuch as the parties have argued these motions together and because of certain questions common to all three actions, they will be disposed of in one opinion.

I. The complaint in the first action alleges the infringement of plaintiff's renewal copyright in the music of a musical composition entitled "I Wonder Who's Kissing Her Now".

It appears that in or about 1907 or 1908 Morton Singer planned to produce a musical show entitled "The Prince of Tonight". Joseph E. Howard was engaged to write the music for the show; Will M. Hough and Frank R. Adams, the book and lyrics. At that time Howard was traveling with various shows. He would write 30 or 40 "lead" sheets of music and pursuant to instructions from Singer, the producer, Howard would send the sheets to Hough and Adams. Howard testified at page 19 of his deposition: "They didn't change any music. They took my chorus. They took the verse of another melody and transferred it. Sometimes when they were writing lyrics they didn't like my verse and they would take it and put it into another chorus".

Hough and Adams wrote the titles and the lyrics of the compositions. The musical composition "I Wonder Who's Kissing Her Now", consisting of the title, the music and the lyric, was copyrighted on February 1, 1909, in the name of Charles K. Harris, a music publisher, as the proprietor thereof, pursuant to assignments from the authors. The original application for copyright registration specified the authors of the musical composition as Will M. Hough, Frank R. Adams and Jos. E. Howard—the former as the authors of the book and lyrics and the latter as author of the music.

Plaintiff, Edward B. Marks Music Corporation, bases its claim to a renewal copyright of the music only, on the following: By an instrument in writing, on June 6, 1933, Joseph E. Howard sold and assigned

to the plaintiff for $200 all his right, title and interest in and to a great number of musical compositions, including "I Wonder Who's Kissing Her Now", specifically assigning any rights he might have to a renewal of the copyrights of the aforesaid musical compositions, and covenanted to make proper applications for the renewal of the copyrights for the benefit of the plaintiff. Paragraph Second of the agreement provided: "Second: The Publisher hereby agrees to pay to the Owner a royalty of five cents (5¢) per copy for each and every copy sold of compositions written and composed by him and five cents (5¢) jointly per copy for each and every copy sold of compositions collaborated in by him, such payments to be made at the Publisher's New York place of business semi-annually, as soon after the 25th. day of January and the 25th. day of July in each year, during the term of the said copyright, as the proper statements can be prepared."

The agreement was recorded in the Copyright Office April 30, 1934. On February 1, 1936, Howard applied for and received from the Register of Copyrights a certificate of registration of the renewal of the copyright of the "musical composition" "I Wonder Who's Kissing Her Now". Harris filed the application for Howard. On March 3, 1936, Howard assigned all his interest in said renewal copyright to the plaintiff. The assignment was recorded in the Copyright Office April 4, 1936.

Plaintiff's publication contains the title and the lyrics, as well as the music. It bears a notice "Copyright assigned 1936 to Edward B. Marks Music Corporation. Copyright 1936 by Joseph E. Howard. Copyright 1909 by Chas. K. Harris".

Paragraph Twenty-Fifth of the complaint alleges: "Twenty-Fifth: After March 3, 1936, defendants infringed said renewal copyright by threatening to publish, publishing and placing upon the market a musical work bearing the same title copied largely from plaintiff's copyrighted music and musical work entitled 'I Wonder Who's Kissing Her Now' and by other uses thereof and by granting and offering to grant licenses, assignments and other benefits in the said copyright and by threatening to collect and collecting revenue and other compensation and benefits therefrom."

Defendant Harris interposed a defense in which, after pleading the facts in respect to the original copyright, it is alleged that on December 2, 1916 for a valuable consideration Howard sold and granted to Harris all of Howard's rights "by way of copyrights or otherwise".

The said assignment of December 2, 1916 is on a printed form and states that for a consideration of $150 Joseph E. Howard "has bargained and sold, and by these presents does grant and convey unto the said party of the second part, his executors, administrators and assigns all the right, title and interest by way of copyright or otherwise the party of the first part has in and to all my musical compositions published by Chas. K. Harris of New York City". The words "all my" are written above the words "a certain" which are lined out. The words "published by Chas. K. Harris of New York City" are filled in partly above the words "known as" which are lined out and partly on a blank line evidently intended for the name of a musical composition. The document also contains the statement that the party of the first part (Howard) released the party of the second part (Harris) "from payment of royalties or otherwise by reason of any contract or understanding had between the parties concerning said musical compositions."

Isabelle B. Monroe in an affidavit swore that she was present at the execution of said instrument and that Howard intended thereby to convey to Harris his renewal right in the musical composition in question. Defendant, Cora L. Harris, contends that the plaintiff had knowledge of defendant's rights under the aforesaid instrument, although it was not recorded, long prior to the time of Howard's actual assignment of his renewal copyright to the plaintiff in March 1936. Cora L. Harris also avers that pursuant to the contract of December 2, 1916, Howard on April 28, 1936, executed a formal legal assignment to her of the renewal copyright in question and that said assignment was recorded February 3, 1937.

The alleged infringing publication of defendant Harris contains the title, lyrics and music and bears the notice "Copyright 1909 by Chas. K. Harris. Arrangement Copyright 1935 by Chas. K. Harris".

In this first action, defendant, Jerry Vogel Music Co. Inc., claims that Hough and Adams applied for a renewal of the copyright on the musical composition "I Wonder Who's Kissing Her Now" and assigned all their rights therein to said defendant.

No documents or copies are submitted. The defendant Vogel Co. contends that plaintiff cannot enjoin said defendant from publishing the musical composition because it became a joint owner of the copyright with the plaintiff under the assignment to Vogel of the rights of Hough and Adams.

The alleged infringing publication of defendant Vogel Co. includes the title, lyrics and music and carries the notice "Copyright 1937 by Will M. Hough and Frank R. Adams. Copyright assigned 1937 to Jerry Vogel Music Co. Inc."

With respect to defendant Vogel, plaintiff concedes Vogel is entitled to publish the words and title of said musical composition but maintains that under the renewal copyright plaintiff alone can publish the music thereof. However, plaintiff is publishing the "musical composition" as a whole—title, lyrics and music. Plaintiff argues that although the copyright was originally secured for a musical composition consisting of title, lyrics and music, an author on applying for a renewal of the copyright gets a renewal only of his own work—that Howard's renewal copyright extends only to his music and the Hough and Adams renewal embraces only the lyrics. According to plaintiff, upon renewal of the copyright of a musical composition such as this, the ties of the original copyright that held together the title, music and lyrics of the musical composition, are broken and the musical composition disintegrates.

As the musical composition herein was copyrighted prior to the effective date of the Copyright Act of 1909, Section 24 of said Act governs the renewal rights. Tobani v. Carl Fischer, Inc., 2 Cir., 98 F.2d 57. Section 24, 17 U.S.C.A. § 24, provides as follows: "§ 24. Same; renewal; subsisting copyrights. The copyright subsisting in any work on July 1, 1909, may, at the expiration of the term of twenty-eight years from the time of recording the title thereof as provided by former law, be renewed and extended by the author of such work if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period of twenty-eight years. If the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privilege of renewal and extension granted under this section: Provided, That application for such renewal and extension shall be made to the copyright office and duly registered therein within one year prior to the expiration of the existing term. (R.S. § 4953; Mar. 4, 1909, c. 320, §§ 24, 64, 35 Stat. 1080, 1088.)"

Howard never copyrighted the music of the composition in question separate from the lyrics, nor did Hough and Adams copyright their lyrics and title separate from the music. The statutory warrant is for the renewal of the "subsisting" copyright. Here the title, music and lyrics were originally copyrighted as a musical composition—one copyright—and I am of the opinion that under Section 24, supra, a renewal of the "subsisting" copyright is a renewal of the musical composition, comprising both music and lyrics—not the music or lyrics alone. Indeed the application was for a renewal of the copyright subsisting in the work, classed as a "musical composition", and the work is described as the "musical composition" in the certificate of copyright registration issued by the Register of Copyright on Howard's application for a renewal. Howard did not apply to renew the copyright in the music alone— nor was the renewal certificate so limited.

Many pages of the affidavits and depositions are devoted to the issue of whether or not Howard, the composer of the music, and Hough and Adams, the authors of the lyrics, were joint authors of the musical composition. Plaintiff seems to argue that there can be no joint authorship unless the parties sit down together and work towards a common design, each reviewing and correcting the other's contribution to the whole production. Plaintiff therefore concludes that in the case of a musical composition consisting of lyrics and music, unless the composer helps with the lyrics and the writer of the lyrics assists in composing the music, there would be no common design and no joint undertaking to which each would be contributing.

In the present case the joint work was the song, the combination of the words and music, later copyrighted as a "musical composition". That was the common end towards which the joint efforts of the authors were directed. Howard wrote the music for choruses and verses, without even a title. He knew that Singer had engaged Hough and Adams to write lyrics for the music Howard composed. Howard

sent his "lead sheets" direct to Hough and Adams. Howard has described how they would sometimes combine the music of a verse of one lead sheet with the chorus of another and write the lyrics for the combination. The words and music were not unconnected. They had the common bond of measured movement or cadence. The emphasis on certain words of the lyrics had to fit the movement of the music. The rhythm of the lyrics and the sequence of the musical notes produced the melody or song, which was copyrighted as a "musical composition". The collaboration that produced the harmony of the two, the words and the music, made the song a musical composition, which was the result of a joint effort. Physical propinquity of the authors and consultations while this was being done, were not essential. They both knew that the lyric and music were to be properly combined in the musical composition, to be published as a unit. This was the common design. The music was tuneful. The title was arresting. The development of the theme in the lyrics was intimate and amusing. All contributed to the popularity of the "musical composition". The title, lyrics and music were associated as a unit in the public mind. Howard in his deposition testified that the melody had never been published apart from the lyrics or under any other title; that he never sang the melody to any other lyrics—"It wouldn't be any good" if he did; that it was impossible to refer to the musical composition by any other name.

"To constitute joint authorship there must be a common design". Levy v. Rutley, L.R. 6 C.P. 523, cited and quoted from in Maurel v. Smith, 220 F. 195, 200. (Opinion by Judge Learned Hand, in the District Court.) In the Maurel case Judge Hand discussed the question of joint authorship where one defendant, Robert B. Smith, wrote the lyrics, plaintiff the scenario for the opera, and Victor Herbert composed the music. As to the lyrics Judge Hand said: "Moreover, it is not necessary to hold that the 'lyrics' have any relation whatever to the plot, or owe any suggestion to it in the mind of their composer, because they became united with dialogue and plot and music into one composition, and whatever their origin, in their presentation the whole was single. Their subsequent separate publication did not break this original unity, because it is impossible to say how much of their vogue was due to them alone, and how much to their presen-

tation along with the opera as a whole. * * * When several collaborators knowingly engage in the production of a piece which is to be presented originally as a whole only, they adopt that common design, mentioned in Levy v. Rutley, supra, and unless they undertake expressly to apportion their contributions, they must share alike. * * * These cases must be taken as declaring, even if it was not essential to the decision, that one who contributes to such a joint production does not retain any several ownership in his contribution, but that it merges into the whole."

The decree, as part of the relief granted, awarded plaintiff an interest in the copyright of the songs, which Harry B. Smith and Victor Herbert had copyrighted through the music publisher G. Schirmer, Inc. "The appositeness of the 'lyrics' to the context" was slight in the Maurel case. Their appositeness to the music was undoubtedly much greater. They certainly became united with the music "into one composition, and whatever their origin, in their presentation the whole was single".

Where the author of lyrics sends them to a composer, either directly or through the medium of a producer or publisher, to have the composer write the music for the lyrics so that the two are thus united into one composition, the author of the lyrics and the composer of the music are co-authors and the statutory copyright of the musical composition is owned jointly by them. The same would be true, if the composer of the music, with a similar purpose, submitted his composition to a writer of lyrics, in order that the lyrics and music should be published as a composite whole. If one co-author copyrights the musical composition in his own name he becomes a constructive trustee for the other co-author. The copyright protects both the words and the music.

The original unity of the lyrics and music in the copyrighted musical composition is not dissolved in the renewal copyright. There is no sound reason why it should be. The statute contains no such direction. The fact that "the statute does not really give to the author a true extension or renewal, but authorizes 'a new grant to the author, or the others enumerated' in section 24" (Silverman v. Sunrise Pictures Corporation, 2 Cir., 273 F. 909, 911, 19 A.L.R. 289), does not mean that different rules as to co-authorship apply to a renewal copyright. The purpose of the

statutory grant of a renewal copyright is stated by Judge Sibley in Harris v. Coca-Cola Co., 5 Cir., 73 F.2d 370, 371, as follows: "The great purpose of a copyright is to secure to authors and artists the financial fruits of their own mental labors. The initial copyright period is frequently assigned to a publisher with but little gain to the author. If the work proves meritorious and successful, the author may have had but little benefit. The second period is intended, not as an incident of the first for the benefit of the then owner of the expiring copyright, but as a second recognition extended by the law to the author of work that has proven permanently meritorious by giving directly to him, if alive, or, if not, to his widow, children, next of kin or executor (but not to an administrator who may represent no relative and no wish of the author), a supplementary copyright upon the terms stated in the statute."

■ The following quotations from Judge Hough's opinion in the Silverman case are pertinent to a consideration of the case at bar:

"There is nothing in the nature of copyright forbidding a separation between the legal and equitable titles; one may hold in trust for others (Harms [& Francis, Day & Hunter] v. Stern, [2 Cir.], 229 F. 42, 145 C.C.A. 2, and Maurel v. Smith, supra), and ownership in common may and does arise from joint authorship (Levi v. Rutley, L.R. 6 C.P. 523; Maurel v. Smith (D.C.) 220 F. [195], 198) as well as from creation of right in a plurality, wherein again it resembles a patent (Blackledge v. Weir [& Craig Mfg. Co., 7 Cir.], 108 F. 71, 47 C.C. A. 212).

\* \* \* \* \* \*

"Assuming tenancy or ownership in common in the next of kin, there is no reason why other and well-known incidents of such title should not control the interpretation of a statute creating common ownership. Thus it is 'a settled rule of law' that the possession of one tenant in common is the possession of all (Mining Co. v. Taylor, 100 U.S. [37], 40, 25 L.Ed. 541); so, too, the entry of one is the entry of all; seisin of one is for the use of all, any act of one is presumed to be for the common benefit; in short the relation between such owners is ordinarily or presumably that of trust (Clymer ['s Lessee] v. Dawkins, 3 How. 674, 11 L.Ed. 778, Rapalje's notes). Especially is the purchase or acquisition of an outstanding title for the common benefit. Rothwell v. Dewees, 2 Black 613, 17 L.Ed. 309; Courtner v. Etheredge, 149 Ala. 78, 43 So. 368."

■ Applying these principles to a renewal copyright, I am of the opinion that the renewal copyright obtained by a co-author of a joint work embraces the whole work, that his interest in the renewal copyright is that of an owner in common, that the renewal copyright enures to the benefit of his co-author or of those entitled to a renewal under the provisions of the Copyright Act, if that co-author be dead.

■ The defendant Harris argues that Howard's assignment of December 2nd, 1916 to Charles K. Harris included any rights of Howard to a renewal copyright, although not specifically mentioned. By the instrument Howard purported to "grant and convey" to Harris all Howard's right, title and interest "by way of copyright or otherwise" in and to all of Howard's musical compositions published by Harris. The language of grant of what Howard "sold" to Harris is very comprehensive. It may be that Howard thereby parted absolutely with his entire interest in the work. Tobani v. Carl Fischer, Inc., 2 Cir., 98 F.2d 57, 60. Plaintiff contends that the purpose of the instrument was to release all of Howard's rights to royalties in the musical composition assigned. Harris filed the application for the renewal copyright in the name of Howard. Thereafter and within a period of two months Howard first assigned the renewal copyright to plaintiff and then to defendant Harris. Under the circumstances, it seems to me that there are issues of fact which will have to be determined on a trial, before it can be said that Harris has no interest in the renewal copyright. The other defendant, Vogel Co., may also have an interest in the renewal copyright, if on the trial it is shown that the Vogel Co. has properly acquired Hough and Adams' interest therein.

Plaintiff's motion for a summary judgment in this case is accordingly denied.

■ II. In the second action, plaintiff claims the rights to the renewal copyright of the musical composition "The Bird on Nellie's Hat". The seventh paragraph of the complaint as originally drawn alleged that—"Prior to September 17, 1906 Alfred Solman and Arthur J. Lamb collaborated in writing the music and words of an original musical work to which they gave the title of 'The Bird on Nellie's Hat'."

866

The complaint was verified January 22, 1941 by plaintiff's president, Edward B. Marks.

By stipulation of parties dated September 18, 1941, plaintiff was permitted to amend its complaint by pleading a new paragraph Seventh as follows: "Seventh: Prior to September 17, 1906 Arthur J. Lamb solely and independently wrote words and lyrics for a musical composition, and thereafter but prior to September 17, 1906 Alfred Solman solely and independently and without collaboration with Arthur J. Lamb wrote music for a musical composition which on or about September 17, 1906 was given the title 'The Bird on Nellie's Hat'."

Edward B. Marks also made an affidavit, sworn to October 6, 1941, in which he states: "I know of my own knowledge that Arthur J. Lamb solely and independently created the lyrics, that some months afterward Alfred Solman solely and independently wrote the music, that there was no collaboration between Alfred Solman and Arthur J. Lamb, and that there was no common design pursuant to which the two men could have worked for I assigned Alfred Solman to write the music many months after Arthur J. Lamb had written the lyrics."

Defendant pleads as part of its defense and counterclaim that the musical composition was written jointly by Alfred Solman and Arthur J. Lamb. Lamb is dead and no affidavit of Solman is submitted. I believe that there is at least an issue of fact presented on the question of common design and collaboration. The Marks' affidavit contains more conclusions than facts. If I had more facts submitted on this motion I might be able to apply the principles discussed in that part of this opinion dealing with similar motions in two other actions wherein the same plaintiff moved for summary judgment.

The combination, the lyrics and the music, was copyrighted as a musical composition and always published as a unit. The copyright was registered September 17, 1906 in the name of the "proprietor" Jos. W. Stern & Co. to which Lamb and Solman had assigned their rights in the musical composition on June 28, 1906. In consideration of the assignment Jos. W. Stern & Co. agreed to pay them "jointly" certain royalties. In the said assignment Arthur J. Lamb was described as author of the words and Alfred Solman as composer of the music.

On January 17, 1907 Lamb executed an instrument whereby he purported to "* * sell, assign, set over and transfer, to and unto the firm of JOS. W. STERN & CO., their successors and assigns, One (1) certain song, words, music and musical composition bearing the name of 'The Bird on Nellie's Hat' to have and to hold the same to and unto the said firm of JOS. W. STERN & CO., their successors and assigns together with all rights to all royalties accruing and all copyrights upon the same, and the right to obtain any and all copyrights for the same, and all renewals and extensions thereof in their own name as proprietors, to the same full extent in all respects as I might or could obtain the same had this present instrument not been made, and the right to use any name as author of the words and composer of the music, in advertising the same or in the publication thereof."

On December 11, 1913, Solman and one Bissing assigned to Jos. W. Stern & Co. a long list of songs and musical compositions including "The Bird on Nellie's Hat", "together with all rights to all royalties accruing"; copyrights and the right to obtain copyrights and "all renewals and extensions thereof".

Joseph W. Stern & Co. up to December 16, 1920, was the predecessor of Edward B. Marks Music Co. which in turn was succeeded by the plaintiff, Edward B. Marks Music Corporation on July 1, 1932.

On September 27, 1933, Solman the "author of the music" made application for a renewal of copyright of the "musical composition" written by Arthur Lamb and composed by Alfred Solman. On June 20, 1936 Solman assigned to plaintiff the renewal copyright. The assignment was recorded in the Copyright Office June 22, 1936.

The registration of the original copyright in the name of Jos. W. Stern & Co. as "proprietor" gave that company no rights to the renewal of the copyright. White-Smith Music Pub. Co. v. Goff et al., 1 Cir., 187 F. 247. Arthur J. Lamb died before the 28th year of the original copyright, so that plaintiff acquired no right to the renewal copyright through any assignment from Lamb. Section 24 of the Copyright Act.

Defendant Vogel claims that Arthur J. Lamb's right to secure a renewal of the copyright devolved upon Cecil Lamb, a surviving brother. The defendant does not

assert that Cecil Lamb ever applied for a renewal of the copyright within the last year of the life of the original copyright. It is defendant's contention that Solman's renewal of the copyright inured to the benefit of both Solman and the legal successors of Lamb entitled to seek a renewal under Section 24. Defendant's answer pleads that on April 30, 1938 and June 4, 1940, Cecil Lamb, "as the joint owner of the copyright on the said musical composition", executed instruments granting the defendant the exclusive right to print, publish, vend and deal in the said musical composition. No copies of these documents are submitted.

There are no affidavits or records before me to show who Arthur J. Lamb's successors were under Section 24 of the Copyright Act. Plaintiff's counsel in his brief asserts that Arthur J. Lamb's executor succeeded to his rights to a renewal of the copyright and refers to Yardley v. Houghton Mifflin Co., Inc., 2 Cir., 108 F. 2d 28; Fox Film Corp. v. Knowles, 261 U. S. 326, 43 S.Ct. 365, 67 L.Ed. 680. The difficulty here is that there is no proof that Arthur J. Lamb left any will or that any executor was named. Nor is there any proof to show that any successor of Arthur J. Lamb, legally entitled to do so, took any steps under Section 24 to obtain a renewal of the copyright, or properly assigned any rights in the renewal copyright applied for by Solman.

There are certain issues of fact which will have to be decided at a trial, before it can be said that Cecil Lamb had any rights under Section 24 which he could assign to the Vogel Co.

The motion for summary judgment in this case is accordingly denied.

III. The third action involves a suit for damages and for an injunction because of an asserted copyright infringement of the musical composition entitled "December and May". It appears that Edward B. Marks wrote the lyrics and William Loraine composed the music and that they separately transferred their respective works to Frank Harding, a publisher. In an affidavit, sworn to October 6, 1941, Mr. Marks states: "When I completed the lyrics for 'December and May' I turned them over to Frank Harding and asked him to procure someone to write the music for them. Without my knowledge Frank Harding procured William Loraine to write music for the lyrics of 'December and May'. At the time Frank Harding procured William Loraine to write the music I had not known or met William Loraine. Quite a long time after the song was published by Frank Harding I met William Loraine for the first time."

From the above plaintiff argues that there was no common design and no collaboration between Marks and Loraine and that they were not co-authors of the musical composition later copyrighted. Mr. Marks had the design or purpose of having music written for the lyrics by some composer to be selected by Frank Harding and thereafter having the lyrics and music published as a unit. Loraine had the design or purpose of writing music for the lyrics submitted to him by Harding and later having both published as a unit. Both Marks and Loraine had the same design. It was common to both before the publication, whether or not they knew each other. They collaborated in the production of the musical composition even though Marks wrote no part of the music and Loraine made no change in the lyrics. Music and lyrics do not fall together by chance as a harmonious whole. When lyrics and music are united in the musical composition, which was the objective of their common design, the authors have collaborated in producing that result. They are co-authors and joint owners of the musical composition in which their labor has "mingled". Maurel v. Smith, 2 Cir., 271 F. 211, 215.

On November 9, 1893, the musical composition "December and May" (title, lyrics and music) was copyrighted as a unit by Frank Harding and the application for registration of the copyright designated Frank Harding as "proprietor" and stated that the musical composition was "written by Ed Marks" and "composed by William Loraine". It was published as a unit. On November 11, 1920, Edward B. Marks (plaintiff's assignor), the author of the lyrics, applied for and secured the renewal copyright of the "musical composition".

Defendant, Vogel Co., presumably derives any rights it may have in the renewal copyright through an assignment to it dated July 20, 1940, of all the right, title and interest of William Loraine (the author of the music) in the term of the renewal copyright. Plaintiff asserts that its renewal copyright covered only the lyrics; that Loraine was alive during the last year of the original copyright term and did not make

application for a renewal copyright in the music; that the music thereupon entered the public domain; that plaintiff has the sole right to the lyrics and may publish them together with the music; that neither Loraine nor his assignee has the right to use the lyrics but may of course publish the music, as any one else can. This contention disregards the basic fact that the subject matter of the renewal copyright was the same as that of the original copyright, a musical composition consisting of the lyrics and music.

Neither the words nor the music of said composition were ever copyrighted separately. The musical composition as a unit was the subject of the renewal copyright. Nothing less was applied for by Marks and there was no subject limitation on the renewal. If Marks was entitled to apply for the renewal copyright, it inured to the benefit of both Marks and Loraine as tenants in common. The failure of Loraine to file for renewal was not fatal. Marks or his assignee, the plaintiff corporation, held the renewal copyright as trustee for themselves and for their co-tenant, Loraine, and for Loraine's assignee, the defendant, Vogel Co., after Loraine's assignment to Vogel. Maurel v. Smith, supra.

The inequitable results of plaintiff's argument are apparent in this case. Marks was alert to the requirements of the Copyright Law as to renewals. Apparently Loraine was not. Although the musical composition was the joint work of both, Marks did not notify his co-author Loraine to file an application for a renewal. If Loraine had done so, according to the Marks' argument, Marks would not have had the right to publish the music of Loraine with the lyrics of Marks. That would not have suited the music publishing business owned by Marks. By saying nothing about a renewal to Loraine, who forgot about it himself, Marks believed that the music would fall into the public domain, so that the plaintiff corporation could publish the music together with the lyrics, but no one else could. For all practical purposes Marks would become the sole owner, for the renewal period, of the "musical composition", consisting of the title, lyrics and music.

Equitable results, however, would result by applying to the renewal of the copyright of a joint work the same principle that is applied to the original copyright. If a co-author or his statutory successors apply for a renewal of the copyright of a joint work, the renewal should inure to the benefit of those who would be entitled to the renewal as co-authors or as the appropriate successors to the co-authors' renewal rights, in the order prescribed in the Copyright Act.

Plaintiff's motion for summary judgment is denied.

Separate orders should be submitted, on notice, in each of the three actions.