Mr. Justice DAVIS
 

 delivered tbe opinion of the coui't.
 

 The whole controversy turns upon the true interpretation of the agreement made on the 7th October, 1828.
 

 Independent of any statutory provision the right of an author in and to his unpublished manuscripts is full and complete. It is his property, and, like any other property, is subject to his disposal. He ma}^ assign a qualified interest in it, or make an absolute conveyance of the whole interest.
 

 The question to be solved is, do the terms of this agreement show the intent to part with the whole interest in the publication of this book, or with a partial and limited interest ?
 

 The agreement on the one side is “to furnish, in manuscript, the reports of said court for publication,” with an additional clause that the publishers “ shall have the copyright of said reports to them and their assigns forever.” The cause or consideration of this agreement is a stipulation by the other side for a certain sum of money, and the performance of certain duties in connection with the publication.
 

 It is insisted by the appellants that a just interpretation confines the agreement to a mere assignment of the interest in such copyright, as is provided for in the act of 31st May, 1790; that this was the law in force when the contract was entered into; that the fourteen years therein provided for, with the right to a prolongation of fourteen years more, is all that the publishers, at most, are entitled to, and that they are excluded necessarily from the benefit of the provisions conferred by the act of the 3d February, 1831, granting to authors an additional extension of fourteen years.
 

 In our view this is too narrow a construction. The fair and just interpretation of the terms of the agreement indicate unmistakably that the author of the manuscript, in
 
 *615
 
 agreeing to deliver it for publication at a stipulated compensation, intended to vest in the publishers a full right of property thereto.
 

 The manuscript is delivered under the terms of the agreement “for publication.” No length of time is assigned to the exercise of this right, nor is the right to publish limited to any number of copies. The consideration is a fixed sum of $1000. Whether one or one hundred thousand copies were published the author was entitled to receive, and the publishers bound to pay, this precise amount.
 

 As between the parties to the agreement the absolute interest was conveyed by the stipulation of Paige, that he would furnish the manuscript for publication. Paige could no longer do any act after such delivery for publication inconsistent with the absolute ownership of the publishers. But it was proper, for the protection of the publishers, that they should be in position to assert the remedies given by the law against intruders, and it is to this end it is added in the agreement,
 
 “and
 
 the said Gould & Banks shall have the copyright of said reports to them, their heirs, and assigns forever.” It is not covenanted that the publishers should take out the copyright, nor is there any express agreement for an assignment to them by Paige, if he should take it out. Undoubtedly the provision, that the publishers “should
 
 have
 
 the copyright,” would authorize them to apply for it, and if Paige had taken it out in his own name it would have enured to their benefit. But, as between Paige and the publishers, the rights of the latter could not be estimated differently, whether they had or had not availed themselves of the provisions of the act.
 

 We have been referred to the case of
 
 Cowen
 
 v.
 
 Banks,
 
 in which Mr. Justice Nelson, on a similar agreement, expressed the opinion that the construction now contended for by the appellants was the true one. No reason is assigned by the judge for his opinion, and the case was such that it was not necessary that this point should be maturely considered. The practical construction by Judge Cowen of his own contract, in opposition to his interest, is cited in the decision to
 
 *616
 
 which we are now referring, together with the fact that the judge died in 1844, three years after the expiration of the first term of the copyright. On this it is said, with some emphasis,
 
 *
 
 “ that he had all this time acquiesced in the claim of the assignee.” The decree was that the contract be reformed accordingly.
 

 In the case now before us the construction contended for by the appellants was, for the first time, urged by letter of Mr. Paige, 13th January, 1858, addressed to the appellees, who replied on 3d February following, asserting their absolute right of ownership, with an unlimited license to publish and sell. The parties lived together after this in the same State until 31st March, 1868, when Paige died, a period, of ten years, during which no further notice was ever taken of this subject, and no attempt by Paige, by act or protest, to interfere with the exercise of the right of the appellees to publish and sell. It is difficult to account for this long acquiescence upon any assumption that Paige, after the receipt of the reply to the publishers, had faith in the construction now urged. If this agreement needed any extraneous aid to indicate the intention of the parties, this acquiescence would certainly be persuasive of the view we have taken of it.
 

 Decree aeeirmed.
 

 *
 

 24 Howard’s Practice Cases, 72.