WHITE-SMITH MUSIC PUB. CO. v. GOFF et al.

(Circuit Court of Appeals, First Circuit. March 1, 1911.)

No. 909.

COPYRIGHTS (§ 33*)—RENEWALS—CONSTRUCTION OF STATUTE.

Copyright Act March 4, 1909. c. 320, § 24, 35 Stat. 1080 (U. S. Comp. St. Supp. 1909, p. 1297). which provides that "the copyright subsisting in any work at the time when this act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work if still living, or the widow, widower or children of the author if the author be not living, or if such author, widow. widower or children be not living then by the author's executors, or in the absence of a will his next of kin, for a further period," etc., in accordance with a well-settled statutory policy, limits such right of renewal to the persons named therein and does not extend it to the "proprietor" of the work, although both under that and the prior statute an original copyright might be secured by such proprietor.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 33.*]

Appeal from the Circuit Court of the United States for the District of Rhode Island.

Suit in equity by the White-Smith Music Publishing Company against Ira N. Goff and others. Decree for defendants (180 Fed. 256), and complainant appeals. Affirmed.

Alexander P. Browne (Browne & Woodworth, on the brief), for appellant.

Horatio E. Bellows, for appellees.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This appeal grows out of a bill in equity brought by the complainant, the White-Smith Company, against the respondents, Goff and Darling, alleging infringement of a copyrighted musical composition. The complainant is the publisher, and not the author. It claims a statutory extension of a copyright as proprietor under sections 4952 and 4954 of the Revised Statutes (U. S. Comp. St. 1901, pp. 3406, 3407). It offered registration under the statute, and, although registration was refused, yet it fully complied with the requirements of law, and is entitled to maintain this suit if it had any statutory right to the extension. Whether at this time the author was living does not appear. The respondents make no claim under any copyright. The complainant acquired its original rights under the following contract:

"Boston, June 29, 1876.

"Memo. of agreement between Eben H. Bailey, of the first part, and Mess. White, Smith & Co.. Music Publishers, of the second part. The party of the first part hereby agrees to furnish the party of the second part, eight (8) MSS. of his own original instrumental compositions each year, during the term of this contract, and upon the acceptance of which, the party of the second part agrees to pay the sum of ($25.00) twenty-five dollars each, as soon as published. This contract to remain in force 3 years from above date, or until June 29, 1879, and during which time, the party of the second part,

shall hold the exclusive right and title to all original inst'l compositions or transcriptions by the party of the first part, who shall not in any case offer them to any other party or publisher, either under his own name or "nomde-plume." It is also agreed by the party of the first part, to give to the party of the second part, all his trade and influence in furtherance of this contract.                                    [Seal.]    White Smith & Co.
"[Signed]    Eben H. Bailey.
"Witness: [Signed]    Frank E. Crane."

As the bill alleged no other right than what we have stated, it was demurred to, and the decision of the Circuit Court was in favor of the respondents, on the ground that the complainant had no statutory interests in the extension.

Sections 4952 and 4954 of the Revised Statutes applied to the copyright at the time it was taken out:

"Sec. 4952. Any citizen of the United States, or resident therein, who shall be the author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print. or photograph or negative thereof, or of a painting, drawing, chromo. statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such person shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same; and, in the case of a dramatic composition, of publicly performing or representing it, or causing it to be performed or represented by others. And authors may reserve the right to dramatize or to translate their own works."

"Sec. 4954. The author, inventor, or designer, if he be still living and a citizen of the United States and resident therein. or his widow or children. if he be dead, shall have the same exclusive right continued for the further term of fourteen years, upon recording the title of the work or description of the article so secured a second time. and complying with all other regulations in regard to original copyrights, within six months before the expiration of the first term."

When the copyright thus acquired under section 4952 expired, the act approved March 4, 1909, c. 320, 35 Stat. 1080 (U. S. Comp. St. Supp. 1909, p. 1297), was in force, of which so much of the twenty-fourth section as is pertinent at this point reads as follows:

"Sec. 24. That the copyright subsisting in any work at the time when this act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period such that the entire term shall be equal to that secured by this act, including renewal period."

The complainant maintains that the result in the Circuit Court was to deprive it of a vested right; but, as the language of the two statutes which we have cited was for this purpose essentially the same, no such question can arise. Moreover, as is thoroughly settled by the Supreme Court, all rights of copyright in the United States are purely statutory, whatever they may once have been in England; and it is not so easy to understand how there can be a vested right under a public statute which has not actually accrued, and which lies only in the future. This proposition, however, we can pass by.

It is to be noted that in each statute the grant of the original

copyright is to the author or proprietor, while as to the provision for an extension the word "proprietor" is studiously stricken out. Neither is it true that the provision for the extension in either statute operates automatically or in any line which recognizes a continuing right. While the words "renewed and extended," in their proper and ordinary construction, relate to a continuing right, yet the fact that, if the author is not living, the "widow, widower or children" of the author are entitled to the additional term makes the provision of each statute in reference thereto strictly personal, and not really and truly a renewal or extension. Therefore neither statute on its face provides really and truly an extension to the author, his assigns, executors, and administrators, but a new grant to the author or others enumerated as we have said.

In this connection we will observe that the complainant relies on the word "proprietor" appearing in what follows in the same section 24, namely:

"Provided, however, that, if the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privilege of renewal and extension granted under this section."

This has reference, of course, to the provision about composite work in section 23 of the same act of March, 1909; yet by its own implication it clearly defeats the proposition of the complainant, because, if that were correct, this proviso would not be necessary in order to entitle a mere proprietor to the privilege of renewal and extension under any circumstances whatever. Indeed, whether the position of the complainant or the respondents be correct, the word "proprietor" comes in legitimately because, in connection with the renewal, the persons who control the right thereto, whether widow, widower, or the author himself, may, during the year prior to the expiration of the existing term nominated in section 24, assign the right to renewal, so that the then proprietor may make the new registration required, and take out the extension in his own name. Further, there is nothing in all these implications suggested by the complainant which, on any just rule of construction, can set aside the plain phraseology of the statute as to any particulars concerned therein. It is therefore at least clear that, by the express terms of the statutes, whether the one existing when this copyright was taken out or the one existing when the extension was applied for, no one except the author or the members of his family or his executors could ordinarily apply for the extension: and this independently of any question for whose benefit the author or the other applicant might hold the copyright when acquired.

However, it is well to show that this is not merely a technical condition precedent, but lies at the bottom of a long-continued and purposely-intended series of statutes. The first section of the original copyright act of May 31, 1790, c. 15, 1 Stat. 124, provided that the original copyright might be taken out by a "citizen or citizens," "his or their executors, administrators, or assigns." In the same section, and as a part of the same subject-matter, the statute gave, using

exactly the same language, to "a citizen or citizens," "his or their executors, administrators, or assigns," a further term of 14 years. There was here no reference to members of the author's family, or to any one who was not in the line of succession or in privity according to the rules of law, but only a repetition of exactly the same persons and successors to whom the first term was given. Therefore, without there being any specific authoritative construction given thereto by the Supreme Court, it was properly assumed that the further term of 14 years was strictly an extension or continuation of the original right, and flowed out of the same in accordance with the ordinary rules of law controlling the devolution of property; so that there was nothing to indicate, as a matter of public policy or otherwise, by the way of pointing out eo nomine any particular persons to whom the extensions should be granted, that a copyright might not be assigned alike for the original term and for all its extensions, improvements, and all other incidentals, precisely as an ordinary patent for an invention may be assigned. There was nothing to indicate any public policy to the contrary. This first appeared in sections 2 and 16 of the act of February 3, 1831, c. 16, 4 Stat. 436, 439. Section 2 related to copyrights obtained after that statute went into effect. It broke up the continuity of title, and gave the right of renewal to the widow or child or children. This clearly recognized the fact that, unlike the view entertained early in England, a copyright is purely a matter of statutory grant, as has been settled ever since Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055, decided in 1834, and recognized by at least several statutes by which Congress has arbitrarily granted copyrights to persons who had not entitled themselves thereto under any existing law. Here, then, was an entirely new policy, completely dissevering the title, breaking up the continuance in a proper sense of the word, whatever terms might be used, and vesting an absolutely new title eo nomine in the persons designated.

Congress thus proceeded on the theory contained in the original statute of Anne, by virtue of which, at the expiration of the first copyright term, the sole right of printing or disposing of copies "returned to the authors thereof, if living." On the well-settled principles of the common law, and also on the well-settled principles applicable to ordinary things, the right of publication having been returned to the original author ceased to exist, and was dissolved into its original elements, precisely as a right of way from Blackacre across Whiteacre ceases to exist when the same title in fee to each parcel vests in the same owner. Whatever might occur afterwards would be entirely a new grant, and, whatever the language used in section 2 of the act of 1831, such was the condition, and whatever further rights arose were disconnected from the original right. Section 2 referred to copyrights which first came into being after that statute went into effect, as we have said. Section 16 of the same act related to copyrights which had been secured prior to the act of 1831, and gave an extension of those copyrights. This did in truth assume to vest the new right in the widow, etc., if the author was not living, and cut out a mere proprietor by omitting his name. It was to this stage of

the legislation of the United States that Paige v. Banks, 13 Wall. 608, 20 L. Ed. 709, related; the original copyright having been taken out in 1828. We will refer to this case again.

In every act since that of 1831, this method of vesting the right to an extension eo nomine has been persisted in. The purpose of these provisions is singularly illustrated by the fact that all the author's administrators are shut out; but his executors, whom he may appoint at his will, are let in. This continues in sections 23 and 24 of the present act of 1909. With this there accumulates a very considerable amount of foreign legislation to which it may be well to call attention in this connection. According to a note made by Mr. George T. Curtis in what is described by Judge Clifford as his very valuable work on copyright, at page 25, it seems to have been the policy of nearly all the civilized world to secure the extension of a copyright to the author or his family, including England, France, Holland, Belgium, and Prussia. There are at least sentimental reasons for believing that Congress may have intended that the author, who according to tradition receives but little for his work, and afterwards sees large profits made out of it by publishers, should later in life be brought into his kingdom. At any rate, such seems to be the purpose of the legislation in the countries referred to by Mr. Curtis, and such was clearly the purpose in much of the earlier legislation in the colonies. It is true that, in the line of what was enacted by Congress in 1790, the Continental Congress, in May, 1783, recommended only that the various colonies should renew the copyright term first given to the author and his legal successors and assigns; but Connecticut in the same year provided, as did the statute of Anne, that at the end of the first term the right of publication should return to the author, and Maryland, Pennsylvania, Georgia, New York, and New Jersey did the same.

It can hardly be conceived that such statutory declarations do not indicate a deep-seated policy which not even the author can defeat. If what statutes we have cited left any question, it would seem to be removed by section 23 of the act of 1909. This defines the limited class of proprietors who may secure the extended term, namely, where there is a composite work as already spoken of, or a corporation, or an employer for whom the work was made for hire. To strengthen the effect of this, it appears in the body of this classification that even a corporation, when it is the assignee or licensee of an individual, is excluded. Of course, section 23 does not directly operate here, but it intensifies the interpretation which we have given to section 24 and other like statutory provisions preceding it. Consequently, except for Paige v. Banks, 7 Blatchf. 152, and 13 Wall. 608, 20 L. Ed. 709, we should be clearly of the opinion that the discussion we have made fully disposes of the case in favor of the respondents here, on the ground of a thoroughly established public policy, supported by sufficient reasons in that behalf. Nevertheless, we are bound to accept Paige v. Banks, to the effect that there was a certain class of cases to which our reasoning would not apply.

There the publishers secured the extension; and there was the peculiar fact that the author contracted to furnish them the manu-

scripts of his publications, which were judicial reports, with a provision that they should have the right thereof "to them and their assigns forever." Looking through the opinion in the Circuit Court, as well as that in the Supreme Court, it might be said that the effect was simply to estop the author as against the perpetual right of the publishers, and nothing else; and it is also to be observed that in that case an extended copyright had in fact been taken out by the author, so that the author might have been said to have held the copyright in trust for the publishers.

In the present case the letter of the statute had not been complied with by any application for an extended copyright made by the author, or by any of those designated in connection with such application if he was not living. It may be that we would be justified in disposing of the present case on that distinction; but it would be so unsatisfactory a distinction as hardly to be worth acceptance by a court of law. If an application by the author was merely a condition precedent, it is plain to us that in some cases it might be a practical denial to the publisher of all right, because, during the short period given for securing the extension, it would be quite impracticable for him to enforce a trust and to establish a right thereto by litigation. Such a construction would apparently make the statute a practical failure as to accomplishing one of its intended purposes. If the statute intended the publisher to secure the benefit of the copyright, it undoubtedly would have so declared directly, instead of hinting at it indirectly through the author. Therefore such a suggestion does not seem to be a reasonable one.

While, of course, not much weight as to the construction of a statute can fairly be given to the report of a committee of one branch of Congress bringing in a bill which is afterwards enacted into the statute in question, yet, where we have such an apparent statutory policy as we have here, in the light of the explanations we have made, such a report clearly declaring that policy must attract decided attention. In this case the present statute of 1909 was accompanied in the House of Representatives with a report, No. 2,222, Sixtieth Congress, Second Session, which was very elaborate, and explained fully the provisions of the bill which accompanied it. It explained positively sections 23 and 24 which are in issue here, and which, as we have shown, practically re-enact what had preceded them, beginning with the act of 1831. After referring generally to the wisdom of a renewal of the term of a copyright, it said:

"It not infrequently happens that the author sells his copyright outright to a publisher for a comparatively small sum. If the work proves to be a great success and lives beyond the term of twenty-eight years, your committee felt that it should be the exclusive right of the author to take the renewal term, and the law should be framed as is the existing law, so that he could not be deprived of that right."

It again said:

"Instead of confining the right of renewal to the author, if still living, or to the widow or children of the author, if he be dead, we provide that the author of such work, if still living, may apply for the renewal, or the widow, widower, or children of the author, if the author be not living, or if such

author, widow, widower, or children be not living, then the author's executors, or, in the absence of a will, his next of kin. It was not the intention to permit the administrator to apply for the renewal, but to permit the author who had no wife or children to bequeath by will the right to apply for the renewal."

What is thus said about the administrator is directly in line with what we have already observed, and is a striking and positive illustration of the fact that the intention of the committee was to provide, as a matter of public policy, that the right of renewal should be personal, and that the author, or those named as the persons in whom he is most concerned, should not in any way be cut off from the benefit of the new monopoly. As to the section which directly touches this case, the report observed as follows:

"Section 24 deals with the extension of copyrights subsisting when this act goes into effect, and has the same provision regarding those who may apply for the extension of the subsisting term to the full term, including renewal, as is found in the preceding section regarding renewals generally."

On examining Paige v. Banks, as reported in 13 Wall., it appears at page 609 (20 L. Ed. 709) that the contract on which the publisher relied was made in 1828, when the act of 1790 was in force, and when no rule of public policy such as we have explained existed or had been declared. The renewal, as appears on page 610 of 13 Wall. (20 L. Ed. 709) was under the act of February 3, 1831. It is true that the essential portion of the act of 1831 appears in the report of the case; and that act, as we have said, first exhibited the general rule of public policy now so plainly declared. Nevertheless this fact was in no way commented on in the opinion of the court, and nothing in that opinion indicates that the court went beyond the state of the law in 1828 with reference to the question involved, except in saying, at the foot of page 614 of 13 Wall. (20 L. Ed. 709), that, on a fair and just interpretation of the terms of the original agreement, to attempt to apply the act of 1831 would lay the basis of too narrow a construction. All through the opinion the court refers to the original agreement made in 1828, without any indication that the court undertook to consider deliberately whether or not the act of 1831 affected, or could affect, the rights of the parties as they were originally established. So far as this is concerned, for aught that appears the court may have accepted the proposition made by the publisher here to the effect that a copyright arising under one statute becomes a vested interest which subsequent statutes cannot disturb. Certainly there is nothing in the decision in Paige v. Banks which justifies us in assuming that, as a result of that case, the decision would have been as it was if the original contract had been made after the act of 1831 came into force; and especially in the light of the accumulated evidence of a clearly intended public policy of the kind we have described, which existed when the questions arose with reference to the copyright here in question, we feel justified in giving full effect to the condition of the statutes as we now find them.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.