## SILVERMAN v. SUNRISE PICTURES CORPORATION.

(Circuit Court of Appeals, Second Circuit. May 11, 1921.)

No. 245.

**1. Copyrights ☞33—Renewal is in effect a new grant.**

Copyright Act March 4, 1909, § 24 (Comp. St. § 9545)', providing for renewal of a copyright on application made within one year prior to expiration by the author, if living, and, if not, by the widow, widower, or children of the author, or if none of them are living, by the author's executor, or, in the absence of a will, by the next of kin, provides for what is in effect a new grant, since the right of renewal is not given to the original proprietor, as such, but only to the persons designated in the statute in the order named.

**2. Copyrights ☞33—Right of renewal not transferable before it accrues.**

Under Copyright Act March 4, 1909, § 24 (Comp. St. § 9545), providing for renewal of a copyright, the right does not arise until one year prior to expiration of the original copyright, when it vests in the person or persons then living given priority by the statute; hence an author dying before that time has no right of renewal, which can be bequeathed by will.

**3. Copyrights ☞33—Renewal may be taken by one of next of kin of author for benefit of all.**

Where the author of a copyrighted book died leaving neither husband nor children and his estate was settled and executors discharged more than a year before expiration of the copyright, the right of renewal *held* to have vested at the beginning of that year in the next of kin, as tenants in common, and the exercise of the right by two out of a number of such next of kin *held* to have vested the legal title to the renewal in them in trust for the benefit of all.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in Equity by Isaac Silverman against the Sunrise Pictures Corporation. From an order denying a preliminary injunction, plaintiff appeals. Reversed.

Augusta Evans Wilson was the author of numerous books, and particularly one entitled "At the Mercy of Tiberius." This novel was copyrighted by her publisher, Dillingham, as "proprietor," and such copyright expired October 12, 1915. Mrs. Wilson died a resident of Mobile, Ala., and testate, in May, 1909, leaving her surviving neither husband, children, nor any descendants of childen deceased. Her will was duly admitted to probate in the county of her residence on May 25, 1909. By it she devised and bequeathed her residuary estate, "including copyright on my books," to three sisters, to the children of deceased brothers, and to the surviving widow of one brother in the same parts or shares as the same persons would have taken as next of kin under the laws of Alabama had the testatrix died intestate.

On August 7, 1911, Mrs. Wilson's executors rendered their final accounts, and the probate court, having ascertained and declared that the debts of the testatrix were fully discharged and all specific legacies paid, distributed the residuary estate to the legatees above referred to or those entitled in succession to such as had died pending estate settlement. Thereupon the executors were fully and finally discharged. April 7, 1915, two of the sisters of Mrs. Wilson filed an application "in accordance with the provisions of section 24 of the act of March 4, 1909," for the renewal of said copyright on the book entitled "At the Mercy of Tiberius." The application stated that this "renewal copy-

right is claimed by us as next of kin Virginia E. Bragg, and Mary E. Tarleton (sisters)." At this time Mrs. Wilson's third sister was dead, leaving children her surviving. It does not appear whether, when the surviving sisters applied for renewal of copyright, any consultation was had with, or the consent obtained of, their nieces and nephews, who were similarly related to Mrs. Wilson.

In or prior to 1920 plaintiff wished to obtain the copyright of "At the Mercy of Tiberius" in order to make a "movie" out of it, and to that end obtained assignment, not only from Mrs. Tarleton, the still surviving sister of Mrs. Wilson, but from all other persons who in 1920 could be comprehended under the description "next of kin" of Mrs. Wilson. An administration d.b.n.c.t.a. was also raised of the Wilson estate, and the administrator assigned to plaintiff whatever rights he had. Defendant openly threatened to produce a photoplay based upon the novel "At the Mercy of Tiberius." Plaintiff applied for the injunction above referred to. No objection was apparently offered below, and none has been presented here, except lack of title in plaintiff. The District Court refused the injunction, and plaintiff appealed.

Ross & Kaufman, of New York City (Walter C. Noyes, Arthur Leonard Ross, and Joseph B. Kaufman, all of New York City, of counsel), for appellant.

Kahn & Zorn, of New York City (J. Joseph Lilly, Clinton T. Roe, and Charles P. Kramer, all of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The single question argued at bar is whether any rights, under the copyright statute (Comp. St. § 9517 et seq.) or otherwise, resulted from the action of a part only of the deceased author's next of kin.

Mere statement of the scope of discussion eliminates, however, everything but inquiry as to how, when, by whom, and for whom what is called "renewal" of statutory copyright may be obtained; for, whatever is the proper historic view, it is authoritatively settled that in the United States there is no copyright, except that both created and secured by act of Congress. Holmes v. Hurst, 174 U. S. 82, 19 Sup. Ct. 606, 43 L. Ed. 904. To dwell on the right of literary property does not advance the matter; for that exists without copyright, is not increased by it, and means neither more nor less, after publication, than it did before, viz. the right of disseminating by every lawful means the author's expression of thought. But the statute and that alone prevents others from doing the same thing; wherefore copyright may be described, though not defined, as the only practical method of uniting publication with profit.

But though plaintiff's rights, if they exist, are derived solely from that section of the act (No. 24 [Comp. St. § 9545]) dealing with renewals, as distinct from original grants or registrations, aid is derived from considering the nature of copyright as property. The exclusive right of multiplying and distributing written, pictured, or otherwise recorded thought is an incorporeal hereditament, having in origin and nature much resemblance to a patent for invention. There are many and important differences in the extent and incidents of the protection given an inventor, as compared with that afforded an author (Bobbs-

Merrill Co. v. Straus, 210 U. S. 345, 28 Sup. Ct. 722, 52 L. Ed. 1086), but they are alike as estates, in that both are statutory only, both give nothing but the power of denying to others what author or inventor had without and before the statutes, and both are incorporeal and heritable. Nor can any difference in respect of estate nature be found between original and renewed copyrights, when both are in existence and are compared.

[1] But there is a marked difference in respect of the persons to whom the rights accrue. No one but the author, or his quasi assignee, the proprietor, can obtain the original copyright (Societe v. Vitagraph Co., 251 Fed. 258, 163 C. C. A. 414), while as was said in White, etc., Co. v. Goff, 187 Fed. 247, 109 C. C. A. 187, the statute does not really give to the author a true extension or renewal, but authorizes "a new grant to the author, or the others enumerated" in section 24. See the same ruling as to an earlier act. Pierpont v. Fowle, 2 Woodb. & M. 23, Fed. Cas. No. 11,152.

The words of the Twenty-Fourth section are given below (Comp. St. § 9545). They relate only to copyrights in force when the act was passed in 1909; but, as section 23 (section 9544) confers in the same words the same privileges as to copyrights under the act, their construction is important.[1]

We cannot discover that what may be called the renewal provisions of the present act have received judicial consideration other than that of White, etc., Co. v. Goff, supra, affirming the opinion of Brown, District Judge, in (D. C.) 180 Fed. 256. These cases very closely follow the reasoning and conclusion of Assistant Attorney General Fowler (28 Op. Attys. Gen. 162) rendered shortly before the judgment of the appellate court.

On this authority, as well as, the reason of the matter, we regard it as settled: (1) That the proprietor of an existing copyright as such has no right to a renewal. (2) There is nothing in Paige v. Banks, 13 Wall. 608, 20 L. Ed. 709, opposed to this ruling. (3) The statute confers no right of renewal upon administrators. (4) The purpose of the statutory renewal provisions is to give to the persons enumerated in the order of their enumeration a new right or estate, not growing legally out of the original copyright property, but a new creation for the benefit (if the author be dead) of those naturally dependent upon or properly expectant of the author's bounty.

[2] Thus far authority may be cited, but hitherto no court has been required to consider such a state of facts as that at bar. When Mrs.

---

[1] "That the copyright subsisting in any work at the time when this act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period such that the entire term shall be equal to that secured by this act including the renewal period: * * * Provided, that application for such renewal and extension shall be made to the Copyright Office and to the register therein within one year prior to the expiration of the existing term."

Wilson died, there was no right of renewal in existence, for that right only arises one year before expiration of the current and original copyright. Again, her estate was distributed and her executors ceased to function before that statutory year began; and when an administrator d. b. n. c. t. a. (who in point of fact was the surviving executor) attempted to sell that which he had never applied for, the year within which such applications are permitted had long passed.

It is, we think, plain that the Legislature intended to keep the original and renewal copyrights continuous; there is no provision for the saving of any rights, if the statutory year be permitted to pass without action by someone. It would seem to follow that, if an author unfortunately dies on the day of expiry of his copyright without having himself acted in the premises, all possibility of a renewal in, by, or for any one is gone forever. It follows that, no matter who had the right to renew, there are no present rights, except such as directly flow from the action of Mrs. Bragg and Mrs. Tarleton, who assumed to do what they did as next of kin. It also follows that the conveyance from the administrator d. b. n. c. t. a. is a nullity, and whether such result flows from the fact of his being an administrator, or from his lack of action when he was executor, is a matter of no present moment.

In the White Case, supra, 187 Fed. 253, 109 C. C. A. 193, it is pointed out that the congressional intent, as evidenced by the report of committee, was "to permit an author who had no wife or children to bequeath by will the right to apply for the renewal." It may be noted here, as the real reason for this litigation, that until after the estate was closed no one thought the copyright worth renewing. Value has been given to this and many other old copyrights, and rights thereto, by the growth of the moving picture and photo play industry.

Defendant's claim to use Mrs. Wilson's novel without recompense to any one, may be thus summarized: (1) Legatees as such never have any renewal rights, because they are not named in the statute. (2) In the absence of immediate family, and because Mrs. Wilson made a will duly probated, the executors, as the next class enumerated, were the only persons capable of applying, and were therefore bound to remain in active office in order so to apply. Their failure so to do worked a forfeiture of the privilege of next of kin. (3) But, if the last point be not well taken, then the right of next of kin is unitary; application must be by all; the effort of a fraction is of no avail.

With the first proposition we agree; legatees as such must get whatever they are entitled to through the executors. How they would or could proceed, if through negligence, malice, or dishonesty executors did not act, is a question not before us. But resolution of the second point depends upon the query: How far has the statute, in sections 23 and 24, given a childless and widowed author the powr to bequeathing by will the right to apply for renewal?

It is plain from the language of the act, and from the design and purpose thereof as expressed by congressional committee and recognized by courts, that the author cannot take away the rights of widow, children, etc., before the opening of the last year of original copyright. It

is not until then that any estate or chose in action arises or exists; and when such right arises it is—as above stated—a new estate, not a true extension of the existing copyright. If it were otherwise, the author could grant to his first publisher the renewal right eo nomine, which is exactly what the statute was designed to prevent.

But what may be assigned can ordinarily be devised, and it results that before the statutory year the author cannot devise the renewal right; consequently in this case Mrs. Wilson's legatees took no such right, so far as this novel in concerned, because shortly the testatrix had as yet nothing to leave. If, however, the author lives to within the statutory year, he may certainly exercise his right, assign it, or bequeath it; and if he dies in the year, but before registration, it is for his executors to function. They would receive the renewal, as do the executors of an inventor dying after application and before issue of patent, who "in the absence of context to the contrary" take "in trust for the next of kin." De La Vergne, etc., Co. v. Featherstone, 147 U. S. 222, 13 Sup. Ct. 285, 37 L. Ed. 138. In this case, had Mrs. Wilson died within the year, her executors would have found "context to the contrary," and would have acquired copyright for the residuary legatees as such.

Result is that we construe the section as vesting the right in or imposing the duty on, executors only when the power or privilege of obtaining renewal was existing in the testator author at the moment of decease. This avoids the anomaly of requiring executors, as such, to do something in respect of a property right not passing by the will appointing them, or capable of so passing. It is consequently held here that, since this renewal right did not exist, it was not affected by the will or the appointment of executors; in short, there was a necessary absence of a will in respect of this right, which only came into existence some five years after the testatrix died.

This holding also renders unnecessary any consideration of the question as to how far an executor is or can be discharged of his office, by anything short of death or revocation of letters—a matter of state regulation, and capable of greatly complicating questions arising under national statutes.

Defendant's last contention requires investigation of the attributes and incidents of the incorporeal property called copyright. The privilege of application may be likened to that "inchoate right" in an invention, which the proper party "may perfect and make absolute by proceeding in the manner which the law requires." Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. When that right arose in October, 1914, it vested in the next of kin, as follows from our findings hitherto. Furthermore, it so vested in them as owners in common; there being no material difference in estate nature on this point between the right to apply and the copyright as and when granted or registered. As to the nature of tenancy, see Carter v. Bailey, 64 Me. 458, 18 Am. Rep. 273; Powell v. Head, 12 Ch. Div. 686; Lauri v. Renad, [1892] 3 Ch. 403; Maurel v. Smith (C. C. A. 2d, Jan. 12, 1921), 271 Fed. 211, affirming (D. C.) 220 Fed. 198.

There is nothing in the nature of copyright forbidding a separation between the legal and equitable titles; one may hold in trust for others (Harms v. Stern, 229 Fed. 42, 145 C. C. A. 2, and Maurel v. Smith, supra), and ownership in common may and does arise from joint authorship (Levi v. Rutley, L. D. 6 C. P. 523; Maurel v. Smith [D. C.] 220 Fed. 198) as well as from creation of right in a plurality, wherein again it resembles a patent (Blackledge v. Weir, 108 Fed. 71, 47 C. C. A. 212.

One of the most characteristic marks of tenancy in common, absence of right to an accounting inter sese, has been recognized in respect of copyright (Carter v. Bailey, supra), as well as in patent law (Blackledge v. Weir, supra); while the right of each part or common owner to license is acknowledged, though with differences of opinion as to the effects on nonlicensing co-owners (Powell v. Head, supra; Nillson v. Lawrence, 148 App. Div. 678, 133 N. Y. Supp. 293), of which the last is more in consonance with corresponding patent law (Walk. Pat. [5th Ed.] § 305).

[3] Assuming tenancy or ownership in common in the next of kin, there is no reason why other and well-known incidents of such title should not control the interpretation of a statute creating common ownership. Thus it is "a settled rule of law" that the possession of one tenant in common is the possession of all (Mining Co. v. Taylor, 100 U. S. 40, 25 L. Ed. 541); so, too, the entry of one is the entry of all; seisin of one is for the use of all, any act of one is presumed to be for the common benefit; in short the relation between such owners is ordinarily or presumably that of trust (Clymer v. Dawkins, 3 How. 674, 11 L. Ed. 778, Rapalje's notes). Especially is the purchase or acquisition of an outstanding title for the common benefit. Rothwell v. Dewees, 2 Black, 613, 17 L. Ed. 309; Courtner v. Etheredge, 149 Ala. 78, 43 South. 368.

Reasoning ab inconvenienti is not legally cogent; but remembering that we must construe this statute "with a view to effecting the purposes intended by Congress," and not so "narrowly * * * as to deprive those entitled to their benefit of the rights Congress intended to grant" (Bobbs-Merrill v. Straus, supra, 210 U. S. at page 346, 28 Sup. Ct. at page 724 [52 L. Ed. 1086]), we may point out that only by treating the act of a fraction of the next of kin as a class act can injustice be prevented. Next of kin are often numerous, as here; widely separated geographically, as here; some may be in parts unknown; yet defendant's argument, pressed to its logical result, means that, if one owner of a microscopic fraction of right cannot be found or can be bought, so that he cannot or will not sign the renewal application, the rest of the family are helpless. The same result would flow from the malicious or purchased act of one child in a numerous family. Assuredly the Legislature never intended such injustice.

It is therefore held that the two sisters, who as next of kin registered the renewal, were lawfully authorized so to do for themselves and their fellow owners in common, their act was in law the act of all, and

plaintiff, having derived title from all, is the owner of a lawful renewal copyright.

Order reversed, with costs, and cause remitted, with directions to grant injunction as prayed for.