### FOX FILM CORPORATION v. KNOWLES et al.

(District Court, S. D. New York. May 18, 1921.)

No. E 19–280.

1. **Copyrights ⬥33—Proprietor has no right of renewal.**

   The right to obtain an extension of a copyright given by Copyright Act, § 24 (Comp. St. § 9545), is a new and independent right existing only in the persons designated without regard to the proprietor of the original copyright.

2. **Copyrights ⬥33—Neither executor nor legatee of author, as such, has right of renewal.**

   Where the author of a copyrighted book died more than a year before expiration of the then existing copyright, neither his executor nor a legatee, as such, could obtain a valid extension under Copyright Act, § 24 (Comp. St. § 9545).

In Equity. Suit by the Fox Film Corporation against Frederick M. Knowles and others. On motion to dismiss bill. Motion granted.

Saul E. Rogers, of New York City (Saul E. Rogers and Percy Heiliger, both of New York City, of counsel), for complainant.

Bick, Godnick & Freedman, of Brooklyn, N. Y. (Fred Francis Weiss and Louis R. Bick, both of Brooklyn, N. Y., of counsel), for defendants.

KNOX, District Judge. The bill of complaint, so far as is now material, contains the following allegations of fact:

That Will Carleton was the author of a collection of poems, among which was one entitled "Over the Hill to the Poor-House," and another "Over the Hill from the Poor-House." Carleton assigned his interest in the poems, together with the right to secure copyright there-

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on, to Harper & Bros., publishers. Upon February 21, 1873, said assignees duly copyrighted the said collection of poems and published the same under the title of "Farm Ballads." On January 7, 1901, and within one year of the expiration of the copyright to Harper & Bros., Carleton applied for and obtained a so-called renewal thereof. The expiration of this renewal was February 21, 1915.

Carleton died December 18, 1912, leaving a will, wherein one Norman E. Goodrich was named as executor and made sole legatee of the testator's property. Letters testamentary were issued to Goodrich, in Kings county, N. Y., upon March 21, 1913. Upon January 21, 1915, Goodrich, "as executor and sole legatee of the estate of said Will Carleton duly filed an application for the renewal of said copyright [obtained by Carleton] * * * in accordance with the Copyright Law of the United States, * * * and on or about the 21st day of January, 1915, the said copyright of the collection of poems entitled 'Farm Ballads,' including 'Over the Hill to the Poor-House' and 'Over the Hill from the Poor-House,' was duly renewed from February 21, 1915, for the period of 14 years to and including on or about February 21, 1929." All of the various publications of the said collection of poems are said to have been suitably inscribed.

On July 27, 1915, Norman E. Goodrich died. He left a will in which he gave all of his property to his wife, Alice L. Goodrich, and named her as executrix. This will was probated, and Mrs. Goodrich qualified thereunder. By instrument dated October 26, 1920, Mrs. Goodrich purported to assign to plaintiff the sole dramatic copyright of the above-named "Poor-House" poems, with the exclusive right to dramatize the same for production throughout the world. It is said that the poems lend themselves to the making of a practical and effective stage representation thereof.

The bill proceeds to allege that defendant Knowles, without the consent of plaintiff or its predecessors in title, and in infringement of plaintiff's dramatic rights, wrote a drama entitled "Over the Hill to the Poor-House," which drama, with its elaborations and modifications, tells the story of Carleton's poem of that name; that thereafter defendants Klein, McWatters, and Myers, likewise without proper consent and with knowledge of plaintiff's alleged rights, and within this district, gave public performances and exhibitions of a drama entitled by the name of Knowles' dramatic version of the Carleton poem.

The foregoing averments, with certain others supplementary thereto, constitute the basis of complainant's claim to equitable relief. Under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi) defendants seek the dismissal of the bill of complaint, it being contended that the same, upon its face, shows a failure of title to any copyright existing upon the poem in question.

It will be noted that complainant's bill does not state if, upon his decease, Will Carleton left him surviving a widow, or children, or any next of kin. In view of the source from which complainant asserts its alleged title, I consider the foregoing omission to be a defect in pleading. This is so by reason of the provisions of section 24 of the copyright statute (Comp. St. § 9545), which regulates the succession

of title to copyright renewals. However, were it not for what I consider other insuperable objections, I should allow complainant to amend its bill in the particulars just mentioned.

Since the present motion was argued and submitted, the Circuit Court of Appeals for this Circuit, speaking through Judge Hough, has decided the case of Silverman v. Sunrise Pictures Corporation, 273 Fed. 909. What was there said makes, I think, a substantial contribution to the law of copyright and is determinative of the result to be reached upon this motion. The court said:

"* * * We regard it as settled: (1) That the proprietor of an existing copyright as such has no right to a renewal. (2) There is nothing in Paige v. Banks, 13 Wall. 608, 20 L. Ed. 709, opposed to this ruling. (3) The statute confers no right of renewal upon administrators. (4) The purpose of the statutory renewal provisions is to give to the persons enumerated in the order of their enumeration a new right or estate, not growing legally out of the original copyright property, but a new creation for the benefit (if the author be dead) of those naturally dependent upon or properly expectant of the author's bounty."

[1] Propositions (1), (2), and (3) effectively dispose of defendants' argument that the renewal which Carleton obtained of the original copyright issued to Harper & Bros. was not held by him as trustee for the publishers.

[2] The Silverman Case further holds that "legatees as such never have any renewal rights, because they are not named in the statute." Therefore, assuming that Norman E. Goodrich, as legatee of the author, Carleton, acquired title to the renewal of the copyright which expired February 21, 1915, he could not again renew the same, for the reason that—and again I quote from the Silverman Case:

"* * * The author cannot take away the rights of widow, children, etc., before the opening of the last year of original copyright. It is not until then that any estate or chose in action arises or exists; and when such right arises it is—as above stated—a new estate, not a true extension of the existing copyright. If it were otherwise, the author could grant to his first publisher the renewal right eo nomine, which is exactly what the statute was designed to prevent. But what may be assigned can ordinarily be devised, and it results that before the statutory year the author cannot devise the renewal right; consequently in this case Mrs. Wilson's legatees took no such right, so far as this novel is concerned, because, shortly, the testatrix had as yet nothing to leave."

As it was with Mrs. Wilson, so it was with Will Carleton—he died before the opening of the year within which the renewal obtained by him could again be renewed. Judge Hough further said:

"* * * We construe the section as vesting the right in, or imposing the duty on, executors only when the power or privilege of obtaining renewal was existing in the testator-author at the moment of decease. This avoids the anomaly of requiring executors, as such, to do something in respect of a property right not passing by the will appointing them, or capable of so passing. It is consequently held here that, since this renewal right did not exist, it was not affected by the will or the appointment of executors; in short, there was a necessary *absence of a will* in respect of this right, which only came into existence some five years after the testatrix died."

From this I reach the conclusion that neither as legatee nor as executor did Norman E. Goodrich obtain any valid copyright by the action

taken by him on or about February 21, 1915. He therefore had nothing which he could bequeath to his wife, and she in turn conveyed no title to complainant.

The bill, therefore, will stand dismissed.