### M. WITMARK & SONS v. FRED FISHER MUSIC CO., Inc., et al.

District Court, S. D. New York.

March 24, 1941.

R. W. Perkins, of New York City (Stuart H. Aarons and Stanleigh P. Friedman, both of New York City, of counsel), for plaintiff.

Hays, St. John, Abramson & Schulman, of New York City (John Schulman and Robert J. Burton, both of New York City, of counsel), for defendants.

CONGER, District Judge.

This is a motion to enjoin pendente lite defendants Fred Fisher Music Co., Inc., and George Graff Jr., from printing, publishing, copying or vending the song. "When Irish Eyes Are Smiling." No preliminary relief is requested against the other defendant, Mills Music, Inc.

In 1912, Ernest Ball, Chauncy Olcott and defendant Graff jointly composed the song "When Irish Eyes Are Smiling", Ball writing the music, Olcott and Graff the lyrics. Ball and Olcott have since died.

At the time the song was written Graff and Ball were under general contract to plaintiff, whereby, for stated royalties, they transferred to plaintiff all their property in songs which they composed, and which contracts contained the following clause: " * * * and the party of the second part (Graff) hereby expressly grants and conveys to the party of the first part (plaintiff) the copyright or copyrights of, with renewals and with right to copyright and renew, and property in any and all musical compositions which he may write or compose or acquire control of * * * ".

Olcott, although not under a general contract, transferred to plaintiff all his rights to this song by a separate agreement. The song was copyrighted in the name of the plaintiff on August 12, 1912, and was thereupon published.

On May 17, 1917, Graff sold, assigned, transferred and delivered to plaintiff for $1,600 all his rights to some 69 songs, includ-

ing the song in question, and which transfer provided, in part:

" * * * and all copyrights and renewals of copyrights and the right to secure all copyrights and renewals of copyrights in the same or in any arrangements or adaptations thereof, and any and all rights therein that I * * * may at any time be entitled to.

"And I do, for myself * * * hereby irrevocably authorize and appoint the Publisher, its successor, successors and assigns, my attorneys and representatives, in my name * * * to take and do such actions, deeds, and things, and make, sign, execute and acknowledge all such documents as may from time to time be necessary to secure to the Publisher * * * the renewals and extensions of the copyright in said compositions and all rights therein for the term of such renewals and extensions. And I agree, for myself * * * upon the expiration of the first term of any copyright in said composition, in this or in any country, to duly make, execute, acknowledge and deliver or to procure the due execution, acknowledgment and delivery to the Publisher * * * of all papers necessary in order to secure to it the renewals and extension of all copyrights in said compositions and all rights therein for the terms of such renewals and extensions."

This instrument was recorded in the United States Copyright Office on November 21, 1935.

On August 12, 1939, plaintiff, upon the authority of the above contract and upon special authority of Mrs. Olcott, applied for the renewal registration in the name of Graff and Mrs. Olcott, which renewal copyright was registered in the name of Graff and Mrs. Olcott.

On August 12, 1939, plaintiff, in the name of Graff, and pursuant to the authority above stated, and as attorney-in-fact for Graff, assigned Graff's interest in the renewal copyright to itself and recorded the assignment in the United States Copyright Office on August 14, 1939.

On August 23, 1939, Graff made personal application to the United States Copyright Office for a renewal registration, and after its registration, on October 24, 1939, he sold this renewal copyright to defendant Fred Fisher Music Co., Inc.

The question presented by this motion is whether or not Graff's original contract with plaintiff, and his later 1917 agreement in

which he purported to give to plaintiff the right to obtain the renewal copyright in his name [1] are not invalidated by the Copyright Law and against public policy, and hence a nullity.

Section 23 of the Copyright Law, 17 U.S. C.A. § 23, reads, in part, as follows: *"Duration; renewal.* The copyright secured by this title shall endure for twenty-eight years from the date of first publication, whether the copyrighted work bears the author's true name or is published anonymously or under an assumed name; * * * And provided further, That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work when such contribution has been separately registered, the author of such work, living, or if such author, widow, widower, or children of the author, if the author be not living, of if such author, widow, widower, or children of the author be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiraation of the original term of copyright * * * ."

■ This section specifically provides that if the author be living, he alone has the privilege of obtaining the renewal in the twenty-eighth year, and if he be dead, the renewal privilege depends on the status of the persons mentioned in the statute who are living in the twenty-eighth year. Fox Film Corp. v. Knowles, 261 U.S. 326, 43 S. Ct. 365, 67 L.Ed. 680.

■ When Congress passed this section of the statute, the Committee to which the bill had been referred rendered a report which reads as follows: "Section 23 deals with the term of the copyright. Under existing law the copyright term is twenty-eight years, with the right of renewal by the author, or by the author's widow or children if he be dead, for a further term of fourteen years. The act of 1790 provided for an original term of fourteen years, with the right of renewal for fourteen years. The act of 1831 extended the term to its present length. It was urged before the

committee that it would be better to have a single term without any right of renewal, and a term of life of fifty years was suggested. Your committee, after full consideration, decided that it was distinctly to the advantage of the author to preserve the renewal period. It not infrequently happens that the author sells his copyright outright to a publisher for a comparatively small sum. If the work proves to be a great success and lives beyond the term of twenty-eight years, your committee felt that it should be the exclusive right of the author to take the renewal term, and the law should be framed as is the existing law, so that he could not be deprived of that right." (Report No. 2222, 60th Congress, Second Session, page 14)

The renewal is a new right which accrues only upon application in the twenty-eighth year. Fox Film Corp. v. Knowles, supra; White-Smith Music Pub. Co. v. Goff, 1 Cir., 187 F. 247; Silverman v. Sunrise Pictures Corp., 2 Cir., 273 F. 909, 19 A.L.R. 289; Danks v. Gordon, 2 Cir., 272 F. 821; Harris v. Coca-Cola Co., 5 Cir., 73 F.2d 370.

Defendants contend that the right of renewal could not be disposed of, alienated or assigned by Graff prior to the twenty-eighth year of the original copyright. Defendants state that, consequently, the agreements made by Graff prior to August 12, 1939 (the beginning of the twenty-eighth year) purporting to dispose of, alienate or assign, or agreeing to dispose of, alienate or assign the renewal copyright are unenforceable.

■■ With defendants' contention I cannot agree. There is no doubt but that an ordinary assignment of the original copyright (similar to Graff's first assignment herein), without specifically providing for the renewal of the copyright by the assignee in the author's name, would not give to plaintiff the right to apply for the renewal copyright, in its own name or in the name of the author. White-Smith Music Pub. Co. v. Goff, supra; Silverman v. Sunrise Pictures Corp., supra. Nor, if Graff had died, could his purported assignment of the renewal copyright be binding on his widow, executor, etc. Fox Film Corp. v. Knowles, supra.

■ However, in the case at bar, Graff has specifically agreed to assign his personal right to the renewal copyright, and hence, if

---

[1] All reference to the renewal rights of the widow of Olcott and Ball have been omitted since this motion is concerned with only the claim of Fisher, which is based on the claim of Graff.

he be alive, which he is, he should be bound by his contract. In the case of Tobani v. Carl Fischer, Inc., 98 F.2d 57, 60, certiorari denied 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420, the Circuit Court for this Circuit stated: "The statute (§ 24 [17 U.S.C.A. § 24]) clearly provides that an additional term will vest in the author if he is living but he may divest himself of the right thus reserved for him by parting absolutely with his entire interest in a work or by an agreement to convey the copyright for the additional term when it shall be secure. In the former instance, he has no interest in the work, and cannot rightly claim an additional privilege granted by the statute. In the latter case, he is bound by his agreement to transfer to another the right when it shall accrue to him. The author here parted with his absolute property in the work and could not himself, if living, secure a renewal of the copyright."

Although the case at bar is distinguishable from the cited case above on the facts, in that there the publisher or employer became the "author" of the copyrighted articles which were created for hire, nevertheless, the language from that case, in my opinion, is applicable to the situation herein.

The cases cited by defendant in support of its position herein that it is against public policy for an assignee to obtain a renewal, even when that assignee has the authority to secure such renewal in the name of the author, treat such violations of public policy only in relation to an assignee of an original copyright attempting to secure a renewal; and these cases do not consider an agreement by the author to assign a renewal such as here present. In fact, language in some of these cases would seem to support plaintiff's contention. For instance, in White-Smith Music Pub. Co. v. Goff, supra [187 F. 249], the court said: "It is therefore at least clear that, by the express terms of the statutes, whether the one existing when this copyright was taken out or the one existing when the extension was applied for, no one except the author or the members of his family or his executors could ordinarily apply for the extension; and this independently of any question for whose benefit the author or the other applicant might hold the copyright when acquired."

And in Corpus Juris Secundum, Copyright and Literary Property, Vol. 18, page 203, § 79, it is stated: "It is quite possible that, while an author cannot by any form of contract authorize his assignee to obtain the renewal, yet he may estop himself from asserting it against his assignee, or may bind himself to hold the renewal copyright as trustee for his assignee, but such estoppel or trust obligation would be personal to the author and would not bind the widow, widower, children, etc., in case of the author's death before accrual of the right to renew, because they do not take under, or in privity with, the author, but by virtue of an independent statutory grant."

The Attorney General of the United States, in an opinion on this subject, said: "When the application for renewal is presented to the register of copyrights, the only thing left for his consideration is whether the applicant is one of the persons designated in the statute. But who may possess the legal or equitable right in the copyright after renewal is another question, and one which is to be determined by the terms of such contract as the author or other person or persons entitled to the renewal may have entered into before or after the renewal is had." 28 Op.Atty.Gen. 162, 166.

And again, the Attorney General stated: "And no doubt it [the renewal copyright] may be the subject of a valid contract before renewal, which would carry the equitable, if not the legal, title thereto when renewed." 28 Op.Atty.Gen. 169.

It would seem that the main intent of Congress was to give a separate right to authors to the fruits of their labors in the renewal copyright. This prevented proprietors and assignees of the original copyright from securing a renewal, but Congress did not, nor does it appear that the statute, prevents the author from specifically and separately agreeing to assign, and assigning, his own renewal rights when, and if, these renewal rights accrue.

The contract to give the renewal right is not similar to the assignment of the interest of a beneficiary in the income of a trust; nor to the assignment of a receiver's or executor's fees; nor to the right to file a mechanic's lien; nor to the right to receive alimony, which rights are, respectively, against public policy. The question herein is not analogous.

I have made a rather exhaustive search of the works of text-book writers on the subject of copyrights. While I have not quoted any of them, I find the majority are in accord with the holding herein.

In deciding this case I have not cited the cases of Cowen v. Banks, 24 How.Prac., N.

Y., 72, 73, and Paige v. Banks, 13 Wall. 608, 80 U.S. 608, 20 L.Ed. 709, for the reason that there is some doubt as which statute was controlling, 1790 or 1831. The distinction is that under the statute of 1790 a renewal could be claimed not only by the author, but also by his assignee, while the statute of 1831 is practically similar to the present statute on this point; the contracts construed in each of the above-cited cases were contracts made prior to 1831.

Some question may be raised that, although plaintiff has the right to the renewal copyright, the procedure of obtaining the renewal herein is defective. However, there appears to me to be no material advantage gained in forcing plaintiff to bring an action for specific performance, or for a declaration of a trust in the author, for the benefit of plaintiff.

The motion for an injunction pendente lite, therefore, is granted as requested herein. Settle order on notice.