## HARRIS v. COCA-COLA CO.
### No. 635.

District Court, N. D. Georgia.

Oct. 6, 1932.

Smith, Hammond Smith & Bloodworth and King & Partridge, all of Atlanta, Ga., for complainant.

Harold Hirsch & Marion Smith and M. E. Kilpatrick, all of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

Complainant, widow of Joel Chandler Harris, the author of the book Uncle Remus, His Songs and His Sayings, instituted this suit against defendant for damages for alleged infringement of the copyright of the book, which she claims to be valid and owned by her.

Defendant moved to dismiss the bill on the ground that it discloses on its face that the copyright is invalid and that there is no equity in the bill.

The hearing was on the motions, and the facts as disclosed by the bill are as follows: The original copyright of the book was se-

714

cured by D. Appleton & Co., in 1880. In 1895 a new edition of the book was published, differing from the old in that the illustrations in the first edition by Church and Moser were replaced by 112 illustrations by A. B. Frost. D. Appleton & Co., at the time of the publication of the new edition, deposited two copies of the same with the Librarian of Congress in accordance with the requirements of sections 3 and 5 of the Copyright Act of 1891, 26 Stat. 1107, 1108 (the act then in force) relating to the obtaining of copyright of books and to the depositing of copies of subsequent editions wherein substantial changes have been made.

It is conceded that no new full-term copyright was secured by such procedure, and that, if a legal copyright had resulted therefrom, separate and distinct from the 1880 copyright, it was not renewed, and expired in 1923.

The question remains, however, whether said procedure had, as claimed by complainant, the effect of incorporating the new matter, the Frost illustrations, into the old copyright of 1880 for the balance of its term, and, if so, was it renewable and preserved to complainant by the subsequent efforts undertaken for that purpose.

In 1908, prior to the expiration of the term of the original copyright, the author died, and complainant, his widow, by proper procedure, renewed the copyright for a further term of fourteen years.

Again, in 1921, complainant secured a further extension of the copyright, under the provisions of the Act of March 4, 1909 (17 USCA § 1 et seq.), which extended the term of the copyright beyond the present, if valid.

Defendant challenges the validity of the subsisting copyright of complainant both with respect to the text of the book, first copyrighted in 1880, and to the Frost illustrations, appearing for the first time in the 1895 edition.

It will be necessary, therefore, to examine the various Copyright Acts involved. There is no question as to the validity of the original copyright of 1880, but the parties differ widely as to the effect of the procedure taken in 1895, when the new edition was published.

At that time the Copyright Law of 1891 was in effect, the material portions of which (sections 1, 3 and 5, being quoted below as

sections of the Revised Statutes) were as follows:

"Sec. 4952. The author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such person shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same;" etc.

"Sec. 4953. Copyrights shall be granted for the term of twenty-eight years from the time of recording the title thereof, in the manner hereinafter directed."

"Sec. 4956. No person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver at the office of the Librarian of Congress, or deposit in the mail within the United States, addressed to the Librarian of Congress, at Washington, District of Columbia, a printed copy of the title of the book * * * nor unless he shall also, not later than the day of the publication thereof in this or any foreign country, deliver at the office of the Librarian of Congress, at Washington, District of Columbia, or deposit in the mail within the United States, addressed to the Librarian of Congress, at Washington, District of Columbia, two copies of such copyright book," etc.

"Sec. 4959. The proprietor of every copyright book or other article shall deliver at the office of the Librarian of Congress, or deposit in the mail, addressed to the Librarian of Congress, at Washington, District of Columbia, a copy of every subsequent edition wherein any substantial changes shall be made: Provided, however, That the alterations, revisions, and additions made to books by foreign authors, heretofore published, of which new editions shall appear subsequently to the taking effect of this act, shall be held and deemed capable of being copyrighted as above provided for in this act, unless they form a part of the series in course of publication at the time this act shall take effect."

It will be observed that section 4952 is the only granting clause and is applicable equally to section 4956 and to section 4959.

In other words, "The author * * * of any book * * * shall, upon complying with the provisions of this chapter, have the sole liberty of printing," etc. That is, the author shall have this "liberty," as to the first edition, by complying with section 4956, and as to "subsequent edition wherein any substantial changes shall be made," by complying with section 4959.

The grant of the liberty or sole right of printing and selling the copyrighted book is as clear and explicit with respect to a "subsequent edition wherein any substantial changes shall be made," as to the first edition. There seems to be no difference whatever in the character of the rights, since, as before stated, the grant as to both is to be found in the same section (4952), and there is only a question as to the duration of the right.

This is determined by section 4953, the only section relating to the duration of the right, which establishes a term of twenty-eight years "from the time of recording the title" of the book. Recording the title is only required to be done once, and that at the time of depositing with the Librarian of Congress "a printed copy of the title of the book" and the "two copies of such copyright book," upon the publication of the first edition. The requirement about the subsequent edition is that "a copy of every subsequent edition wherein any substantial changes shall be made" be filed with the Librarian, and nothing is said about filing or refiling "a printed copy of the title of the book." In this connection, it is significant that the section of the same act, section 2 (section 4954 Rev. St., as amended) which relates to the renewal of a copyright by the widow of an author provides for the "recording the title of the work or description of the article so secured a second time."

Whether such procedure resulted in an amendment of the copyright or in the granting of a new copyright for the unexpired term of twenty-eight years, is a technical nicety which should not determine substantial rights, since Congress, as I conceive its purpose, intended that compliance by the author with the provisions of the act would entitle him to rights, however they may be classified, both as to the original and subsequent editions of his book, of the same kind, extent, terminability, and renewability, as if all had been covered in his original copyright.

It seems a very reasonable and natural thing for Congress to have thus provided a simple, inexpensive, and effective way of extending the protection of a copyright, already granted, to new matter appearing in a subsequent edition, rather than require a cumbersome procedure, which would result in two copyrights on different portions of the same book, for terms of differing duration. The language of the act reasonably construed is sufficient to accomplish such purpose, and there is no reason why this could not be done in this manner as well as in another.

Defendant's suggestion that "the obvious purpose of the requirement is to build up the collection held by the Librarian of Congress by making this a forced contribution of copies of subsequent editions from the holders of copyrights," seems to me to impute a rather petty purpose to Congress when a more substantial and reasonable motive can be found.

Nor am I impressed with the defendant's argument that a motive, other than one to protect the author, is found in the sequence of sections 93 and 94 of the Act July 8, 1870 (16 Stat. 213), since an examination of these sections discloses that the $25 penalty (section 94) applied to failure to deposit the two copies of the first edition as well as the single copy of subsequent editions, and that the provisions relating to the deposit of copies in both instances are set forth in the same section (section 93), as will be seen by the following quotation of both sections:

"Sec. 93. And be it further enacted, That the proprietor of every copyright book or other article shall mail to the librarian of Congress at Washington, within ten days after its publication, two complete printed copies thereof, of the best edition issued, or description or photograph of such article as hereinbefore required, and a copy of every subsequent edition wherein any substantial changes shall be made."

"Sec. 94. And be it further enacted, That in default of such deposit in the post-office, said proprietor shall be liable to a penalty of twenty-five dollars, to be collected by the librarian of Congress, in the name of the United States, in an action of debt, in any district court of the United States, within the jurisdiction of which the delinquent may reside or be found."

Therefore, finding as I do that the copyright of 1880 was broadened by the proceedings taken in 1895 to include the Frost

illustrations, and that the rights thus secured were for a term of twenty-eight years from the time of recording the title of the book in 1880, it remains to consider the effect of the effort to renew the copyright in 1908 and 1921.

In 1908, plaintiff as widow of the author, undertook to renew the copyright in her name under the Copyright Act of 1891, which was still in effect. The pertinent section (R. S. § 4954, as amended) of the act was as follows:

"Sec. 4954. The author, inventor, or designer, if he be still living, or his widow or children, if he be dead, shall have the same exclusive right continued for the further term of fourteen years, upon recording the title of the work or description of the article so secured a second time, and complying with all other regulations in regard to original copyrights, within six months before the expiration of the first term; and such persons shall, within two months from the date of said renewal, cause a copy of the record thereof to · be published in one or more newspapers printed in the United States for the space of four weeks."

Defendant attacks the validity of this renewal on two grounds: First, that it was not effective with respect to the Frost illustrations because Joel Chandler Harris was not their author; and, second, because the proper title was not recorded.

The first objection will be discussed later when the. renewal of 1921 is under consideration, and as to the second, it seems sufficient to point out that the above-quoted section provides for the "recording the title of the work or description of the article so secured a second time," and that the "title of the work" recorded by plaintiff was substantially the same as the title first recorded except for the addition of the words "New and Revised Edition with One Hundred and Twelve Illustrations by A. B. Frost."

To be exact, the full inscription of the title pages of the two editions are set out below:

### UNCLE REMUS

#### HIS SONGS AND HIS SAYINGS

#### THE FOLK-LORE OF THE OLD PLANTATION

#### By JOEL CHANDLER HARRIS

With Illustrations by Frederick S. Church and James H. Moser.

### UNCLE REMUS

#### HIS SONGS AND HIS SAYINGS
by
#### JOEL CHANDLER HARRIS
New and Revised Edition
with One Hundred and
Twelve Illustrations
#### BY A. B. FROST.

■ The recording of the second above quoted title of the work seems to me to be a substantial and sufficient compliance with the statute and that such recording a second time effected a legal renewal of the copyright of the work.

Defendant contends that the last renewal (1921) was invalid because the copyright sought to be renewed was for a composite work and the Copyright Act of 1909, under which it was secured, provides that a copyright of a composite work can only be granted to the proprietor who originally obtained the copyright. The section of the statute in question (section 24 [see 17 USCA § 24]) provides as follows:

"Sec. 24. That the copyright subsisting in any work at the time when this Act goes into effect may, at the expiration of the term provided for under existing law, be renewed and extended by the author of such work if still.living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period such that the entire term shall be equal to that secured by this Act, including the renewal period: Provided, However, That if the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privilege of renewal and extension granted under this section."

Assuming, as above held, a subsisting valid copyright in plaintiff at the time of this attempted renewal in 1921, then the renewal was valid, unless the work be a composite work.

■ In my opinion, the book, comprised of text and illustrations, was not a composite work in the sense this term is used in the act.

"The copyright protects the whole or all parts and contents of a book. When the book is comprised of a number of independent compositions each of the latter is as fully protected as the whole. And so the

copyright protects not only the text but also any engravings, illustrations, figures, etc., contained in the book." Drone on Copyrights (1879) p. 144.

"A book includes the entire volume, and every part, or division of a volume published separately, including the illustrations in it." Weil Copyright Law (1917) p. 207.

See, also, Harper v. Shoppell (C. C.) 28 F. 613.

 Congress intended by the use of the term "composite work" to include such works as compilations, digests, encyclopædias and other collections of this nature, which are independent and distinct works by various authors brought together and published as one work.

The illustrations in a book are very different from the elements of such composite works. The author of a book is in a very real sense also the author of the illustrations, since the artist takes the picture, conceived by the imagination of the author and described in his work, and reproduces it graphically. It is not the same as where an artist produces a wholly original work, that is, conceives the subject-matter of his picture and then puts it into one of the art forms. There may be such originality in portraying the concepts of another as will entitle the artist as well as the author of the concept to have a copyright of illustrations in a book, since originality may be involved on the part of both, but the fact that the artist has reproduced a picture, conceived by the author and so described in the text of the book as to enable the artist to reproduce it, does not destroy the authorship of the author of the book under any reasonable construction of the copyright laws.

I do not think, as contended by defendant, that Congress intended by the above-quoted provision to take away the right of renewal of the author or his widow, and invest it in the proprietor who originally secured the copyright, but who neither wrote nor illustrated the book, merely because the book happened to be illustrated.

Such construction would mean that the author or his widow would have the right of renewal of the copyright of a book, which would include the right to prevent infringement by reproducing the story or parts of it by pictures or drawings, if the book were not illustrated, but would not have this right if the same book happened to be illustrated. Such an unfair and extraordinary meaning should not be read into the provisions of the section, when the clear purpose and meaning of the section are to preserve such right in the author or his widow.

My conclusion is that the copyright of the book and the illustrations, to the extent that the evidence may show them to be copyrightable, have been by the various proceedings above mentioned preserved to plaintiff, and that the petition sets forth a cause of action.

Other questions discussed in the briefs, such as prior dedication, estoppel, measure of damages, the fact of infringement, etc., are not now passed upon, but reserved for future consideration and determination, because they are not properly before the court upon the motions to dismiss the bill and to strike certain portions thereof.

In accordance with the foregoing opinion, an order has been entered overruling said motions.