**HARRIS v. COCA-COLA CO.**

**COCA-COLA CO. v. HARRIS.**

No. 7505.

Circuit Court of Appeals, Fifth Circuit.

Nov. 9, 1934.

Alex W. Smith, Jr., Alex C. King, and Croom Partridge, all of Atlanta, Ga., for appellant and cross-appellee.

Harold Hirsch and M. E. Kilpatrick, both of Atlanta, Ga., for appellee and cross-appellant.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

Esther Larose Harris, the widow of Joel Chandler Harris, asserting a renewal copyright on a book written by her husband entitled "Uncle Remus, His Songs and His Sayings," granted her as widow on December 23, 1921, under section 24 of the Act of March 4, 1909 (17 USCA § 24), brought a bill against the Coca-Cola Company to restrain infringement and to recover damages. A motion to dismiss the bill was overruled, Harris v. Coca-Cola Co. (D. C.) 1 F. Supp. 713; but after a trial a decree was rendered dismissing the bill, the court thinking the claimed copyright established but that no copyrightable matter in the book had been used by the Coca-Cola Company. Appeal and cross-appeal have been taken.

We think the case reached a right result on the merits, because the copyright of Mrs. Harris, assuming its regularity and validity, did not cover the illustrations in the 1895 edition of the book which were used by the Coca-Cola Company in its advertising in 1931 under permission of D. Appleton & Co., the publishers, but, as the court found, without valid permission of Mrs. Harris. It appears without dispute that on November 23, 1880, D. Appleton & Co., as proprietors, obtained copyright of the book under the title and description "Uncle Remus, His Songs and His Sayings; The Folklore of the Old Plantation, By Joel Chandler Harris; With Illustrations by Frederick S. Church and James H. Moser." The illustrations were the work of Church and Moser, though in their preparation Mr. Harris made criticisms and suggestions. On August 27, 1895, by regular procedure as if for a new copyright, D. Appleton & Co., as proprietors obtained copyright of a book entitled and described "Uncle Remus, His Songs and His Sayings, By Joel Chandler Harris; New and Revised Edition with 112 Illustrations by A. B. Frost." The printed matter was the same as before, except that Mr. Harris prefixed a dedication of the new edition. Appleton & Co. had the new illustrations made without the participation of Mr. Harris, and paid Mr. Frost $1,250 for making them. They were quite different from the former illustrations. In concluding the dedication, which took the form of a beautiful letter to Mr. Frost, Mr. Harris said of them: "It would be no mystery at all if this new edition were to be more popular than the old one. Do you know why? Because you have taken it under your hand and made it yours. Because you have breathed the breath of life into these amiable brethren

of wood and field. Because by a stroke here and a touch there you have conveyed into their quaint antics the illumination of your own inimitable humor, which is as true to our sun and soil as it is to the spirit and essence of the matter set forth. The book was mine, but now you have made it yours, both sap and pith. Take it, therefore, my dear Frost, and believe me faithfully yours, Joel Chandler Harris." Mr. Harris died July 3, 1908. On August 12, 1908, a certificate of renewal of copyright "for fourteen years from Nov. 23rd, 1903," which is the date of expiration of the 1880 copyright, was issued to Mrs. Harris on application in her name as widow of Joel Chandler Harris; the book being therein entitled and described as "Uncle Remus, His Songs and His Sayings, by Joel Chandler Harris." Before this renewal expired, Mrs. Harris made application under section 24 of the act of 1909 for the additional renewal term of fourteen years therein provided. The certificate granted on December 1, 1921, stated that it was issued to her as widow of the author and covered a book entitled "Uncle Remus, His Songs and His Sayings, By Joel Chandler Harris."

 It will be noted that, in the two copyrights issued to Appleton & Co. as proprietors, "Uncle Remus, His Songs and His Sayings" is attributed to Mr. Harris as author and the illustrations are attributed to Church and Moser as authors in the first and to A. B. Frost in the second. In the renewal certificates issued to Mrs. Harris, no mention is made of either set of illustrations, but only of that of which Mr. Harris was the author, to wit: "Uncle Remus, His Songs and His Sayings." Whether deliberate or not, this discrimination we are persuaded is legally accurate and essentially just. The great purpose of a copyright is to secure to authors and artists the financial fruits of their own mental labors. The initial copyright period is frequently assigned to a publisher with but little gain to the author. If the work proves meritorious and successful, the author may have had but little benefit. The second period is intended, not as an incident of the first for the benefit of the then owner of the expiring copyright, but as a second recognition extended by the law to the author of work that has proven permanently meritorious by giving directly to him, if alive, or, if not, to his widow, children, next of kin or executor (but not to an administrator who may represent no relative and no wish of the author), a supplementary copyright upon the terms stated in the statute. It is interesting to trace historically this intent. In 1783 the Colonial Congress recommended to the several states "to secure to the authors and publishers of any new books the copyright of such books for a certain time, not less than fourteen years * * * and to secure to the said authors, if they survive, the copyright for another term of fourteen years," etc. The states of Connecticut, Maryland, New Jersey, Pennsylvania, South Carolina, Georgia, and New York promptly passed laws each of which, after references to authors, assignees, and proprietors, provided for the second period of copyright by saying the right *"shall return to the author* thereof if then living." [1] The first Federal Act of May 31, 1790 (1 Stat. 124, § 1), provided for the second period of copyright in the words: "And if, at the expiration of the said term, the author or authors, or any of them, be living, * * * the same exclusive right *shall be continued to him or them,"* etc. Later acts used the same expression, but added as beneficiaries the widow and children if the author be dead. In the Act of March 4, 1909, both in section 23, (17 USCA § 23), which dealt with the renewal of copyrights thereafter to be granted, and in section 24 (17 USCA § 24), which dealt with those existing at the passage of the act, the second period is spoken of as "a renewal and extension" of the author's original right. Composite works, that is, those composed of the copyrightable work of several persons, are provided for in these sections and are put on a special basis, in that the right of renewal is given to the proprietor of the original copyright rather than to the several contributing authors, except that, when an author has separately registered his several contribution, he may have a renewal of his particular copyright. This history, culminating in the present provisions of law, makes it very plain that the second period, now called a renewal or extension, is afforded to the author or his relatives or his executor for the author's own work and because of its merit. It does not extend to another's work, although associated in the same book. If the association is such as to render the work a composite one within the meaning of the last act, the whole right of additional renewal created by section 24 is given to the copyrighting proprietor. Thus one may as a proprietor sometimes have a right of renewal for his own benefit of a copyright which

---

[1] The acts are collected in Copyright Enactments of the United States, 1783 to 1906, Copyright Office Bulletin No. 3.

covers the work of others, but as an author one never 'can. Whether the book here in question is to be considered a composite work consisting of the literary contribution of Mr. Harris and the artistic efforts of others we do not decide, for to hold it such would not help Mrs. Harris. We also think it unnecessary to inquire whether the proceeding by D. Appleton & Co. in 1895 resulted in a new copyright effective to protect the new matter in the new edition of the book for a new copyright term, or whether it enlarged the original copyright to protect for its term the added matter. In neither case would Mr. Harris be the author of the new illustrations, which were neither created nor paid for by him. The fact that Mr. Frost was trying to portray ideas suggested by the writings of Mr. Harris did not make the artistic work of Frost that of Harris. Even photographs of objects have been, since the Act of March 3, 1865 (13 Stat. 540), the subject of copyright by the photographer. The originality of Frost's work is generously and eloquently attested by Mr. Harris himself in the dedication of the 1895 edition. The use of some of these illustrations made by Frost and paid for by Appleton & Co. is the only piracy proven. We think no right to the exclusive use of the Frost pictures came to Mrs. Harris with the extension which the law gave her of the copyright on her husband's literary work.

The judgment is therefore affirmed.